**Billy D. BLUE, Billy Ed Blue, Appellees,**

v.

**Don ROSE, Phillip Rose, Mike Rose, Lynn Rose, d/b/a Rose Bros., Donna Sue Rose, Patti R. Rose, Appellants,**

**and**

**Rose Cattle Company.**

**No. 85–1579.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1985.

Decided March 12, 1986.

Rehearings Denied April 22, 1986.

Mark E. Fitzsimmons, Springfield, Mo., for appellants.

Gerard D. Eftink, Kansas City, Mo., for appellees.

Before ARNOLD and WOLLMAN, Circuit Judges, and GUNN,[*] District Judge.

GUNN, District Judge.

Don Rose, Donna Sue Rose, Phillip Rose, Lynn Rose, Mike Rose, and Patti R. Rose appeal from a final judgment in the amount of $18,800 actual damages and $150,000 punitive damages entered against them in the District Court[1] for the Western District of Missouri. Judgment was entered upon a jury verdict in favor of Billy D. Blue and Billy Ed Blue, breeders of registered Holstein cattle, for fraud incident to the sale of cattle to them by appellants doing business as a partnership or joint enterprise. For reversal, appellants argue that the district court erred in: (1) failing to grant a directed verdict in favor of the three women appellants; (2) giving the jury an instruction on the issue of joint venture; (3) refusing to allow a witness to testify; (4) misstating the measure of damages in the jury instructions; and (5) entering judgment for a single amount of punitive damages against all defendants. For the reasons discussed below, we affirm the judgment of the district court.

The six defendants in this case are all related: Don and Donna Sue Rose are the parents of Phillip and Mike Rose who are married to Lynn and Patti respectively. Together they operate a dairy farm in Missouri. In October 1981 appellees, Texas cattlemen, saw an advertisement in *The Holstein World,* a trade journal, announcing an auction of Holstein cattle at the Rose farm. Appellees sent an agent to Missouri with instructions to buy registered Holstein cows at the auction. On October 17, 1981, appellees' agent purchased thirty-four (34) head of cattle from the Roses at the auction. Each cow was represented in the auction sale catalog and by the auctioneer as being of certain lineage and as being registered or capable of being registered in the Holstein-Friesian Association of America (HFAA). The

agent paid a total purchase price of $33,340.00 and was told that certificates of registry would be furnished. The money from the sale was deposited into an account of the Rose Cattle Co., and the cattle were transported to appellees' farm in Texas.

Several weeks later, concerned that the registration papers had not arrived, appellees telephoned appellant Don Rose to inquire about the papers and told Mr. Rose that if the cows were not registered Holsteins, the sale was rescinded.

Appellees were subsequently notified by the HFAA that the accuracy of the Rose farm's registration records was under investigation. An examination of the records and blood-typing tests revealed that the lineage of all but one of the cows purchased by appellees was not as represented, and the registration of these cows was expunged by the HFAA. Appellees resold all thirty-four cows purchased at the auction.

By special interrogatory the jury found that the six appellants were members of a partnership or joint venture which was responsible for the October 17, 1981 auction. The jury found in favor of appellees on the issue of fraud and awarded $18,800 in actual damages and $150,000 in punitive damages against all appellants jointly. Judgment was entered accordingly and this appeal taken.

## SUFFICIENCY OF EVIDENCE

■ Appellants do not challenge the sufficiency of the evidence to support the jury finding of fraud. Rather, the three women appellants argue that the trial court committed reversible error in overruling their motion for a directed verdict at the close of plaintiffs' case for the reason that the evidence was insufficient to support a finding that they were members of the partnership or joint venture which committed the fraud.

Under Missouri law, a partnership is "a relationship arising out of contract express

---

[*] The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

[1] The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

or implied whereby two or more parties agree to engage in a common enterprise, each contributing capital or services and each sharing in the profits and losses." *Troy Grain & Fuel Co. v. Rolston,* 227 S.W.2d 66, 68 (Mo.Ct.App.1950). A partnership agreement may be implied from conduct and circumstances. *Id.* There is no essential difference between a partnership and a joint venture; they are factual relationships between two or more persons who conduct a business enterprise together. *Grissum v. Reesman,* 505 S.W.2d 81, 86 (Mo.1974). The parties to a partnership are not required to know and fully understand all of the legal incidents of the relationship. "Parties 'entering into agreements and transactions which, by the law of the land, constitute them partners, whatever they may please to say or think about it, or by whatever name they may choose to call it' will be held to be partners." *Troy Grain & Fuel Co. v. Rolston,* 227 S.W.2d at 68, *quoting Meyers v. Field,* 37 Mo. 434, 439 (1866).

In the present case appellant Don Rose testified that the six appellants were authorized to draw checks on the Rose Cattle Co. bank account. Testimony of Donna Rose, given at another hearing and admitted in evidence at the behest of appellants' counsel, was that the six appellants operated the farm together as a partnership and that each member performed services for the enterprise. Donna Rose testified directly that these statements were true. She also testified that she and her two daughters-in-law "ran the tickets" at the October 17, 1981 auction. It was stipulated that the gross receipts for all livestock sales in 1981 by any member of the Rose family were divided three ways among the three families.

It is obvious, then, that the evidence supports a jury question on the issue of whether all six appellants were members of a partnership or joint venture. The district court therefore did not err in denying appellants' motion for a directed verdict. We further hold that the district court properly instructed the jury on this issue and that the special interrogatory was a fair and accurate statement of the law.

## EXCLUSION OF WITNESS

Appellants next argue that the district court erred in refusing to allow the testimony of an individual whom appellants had not listed as a witness. In appellees' case-in-chief, evidence was presented that a certain registered Holstein bull owned by the Roses and listed as the sire of several of the cattle purchased by appellees was in fact impotent. Appellants sought to present the testimony of the former owner of the bull that it had sired several calves. The district court ruled that the witness would not be permitted to testify as he had not been listed by the defendants as required by the court's pretrial order and local court rule. Appellants now argue that this ruling was reversible error.

It is fundamental that it is within the trial court's discretionary power whether to allow the testimony of witnesses not listed prior to trial. *Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 897–98 (8th Cir.1978); *United States v. Pirnie,* 472 F.2d 712, 713 (8th Cir.1973) (per curiam); *see also* Rule 37(b)(2)(B), Fed.R.Civ.P. A ruling by the district court pertaining to this matter will be overturned only if there is a clear abuse of discretion. *Id.*

In the present case, there was no credible support for appellants' contention that they were "surprised" by appellees' evidence on the bull's physical condition. No reason is offered and none appears why appellants could not have timely identified their witness. It is clear that the district court did not abuse its discretion in excluding the witness in question.

## MEASURE OF DAMAGES

Appellants contend that the damages instruction did not correctly set forth the measure of damages. In the damages instruction, the jury was told that if it found for the plaintiffs it should award them the difference between the fair market value of the cattle and the fair market value of the cattle if they had been as represented, plus such sum as would compensate for any other damages plaintiffs sustained as a di-

rect result of the misrepresentation. Appellants argue that this instruction erroneously permitted the jury to award both "benefit-of-the bargain" and "out-of-pocket" damages.

Under Missouri law, a defrauded party may recover the difference between the actual value of the purchased property and its value had it been as represented, as well as special damages. incurred solely by reason of the fraud. *Fong v. Town & Country Estates, Inc.*, 600 F.2d 179, 182 n. 3 (8th Cir.), *cert. denied*, 444 U.S. 942, 100 S.Ct. 298, 62 L.Ed.2d 309 (1979); *Miller v. Higgins*, 452 S.W.2d 121, 125 (Mo.1970).

■ In this case plaintiffs introduced evidence that the difference between the real and represented value of the cattle purchased from defendants was between $11,-000 and $15,000. In addition, plaintiffs introduced evidence of the following expenditures incident to the fraudulently induced transaction:

$600.00 —cost of having their agent attend the auction

$850.00 —the commission paid for the purchase of the cattle

$7,917.00—cost of feeding and caring for the cattle from the time of purchase until time of resale

Under the facts and circumstances of this case, these expenditures were proper items of special damages, and the district court properly instructed the jury as to the measure of actual damages applicable to the issues and the evidence of the case. We also hold that the verdict of actual damages returned was fully supported by the evidence.

**PUNITIVE DAMAGES**

■ Appellants' final point on appeal is that the district court erred in authorizing the jury to award punitive damages in one sum against all defendants, rather than in different amounts against each defendant.

In *Smith v. Courter*, 575 S.W.2d 199, 209–10 (Mo.Ct.App.1979), the Missouri Court of Appeals held that where two partners' liability for punitive damages was entirely vicarious, based upon the tortious acts of an employee of the partnership, a verdict form which did not allow the jury to find different amounts of punitive damages against each partner was proper. The court, however, did not reach the question presented here as to whether such a verdict form is appropriate where liability for punitive damage is based upon one or more partners' own conduct.

Under Missouri law, members of a partnership are liable for torts committed by any member acting in the scope of the partnership's business, even if they do not participate in or have knowledge of the tort. Mo.Ann.Stat. § 358.130 (Vernon 1968); *Martin v. Yeoham*, 419 S.W.2d 937, 951 (Mo.Ct.App.1967).

Specifically, *Martin v. Yeoham* states:
A necessary foundation for the liability of partners * * * for the tortious act of a copartner is that the act shall be performed in the line of the copartnership business, and if the injury results from a wanton or wilful act of one of the parties committed outside the agency or common business, then the person doing the act and causing the injury is alone responsible, unless the act which constituted the tort was authorized by the members of the partnership or subsequently ratified by them, the act itself having been done in their behalf and interest. * * * [T]he true test is not the illegality or the malicious and willful character of the wrong, but whether it was done within the scope of the wrongdoing partner's authority; and such determination must necessarily rest on the facts of the particular case.

419 S.W.2d at 951.

Accordingly, the verdict and judgment for compensatory damages against partners liable for the wilful torts of copartners must be in one amount against all jointly sued partners. *State v. Cook*, 400 S.W.2d 39, 40 (Mo.1966) (en banc).

The above principles are applicable where an award of punitive damages is based upon actions by one or more partners acting within the scope of authority and in

furtherance of the partnership business, as in the present case. In such a situation, under the general principles of agency and partnership law, all the partners could be held jointly liable for the punitive damages, and a single sum verdict is warranted. We recognize that in some cases the evidence might support separate findings of punitive damages in varying amounts against partners jointly sued and that the jury should be instructed accordingly. *See State v. Cook*, 400 S.W.2d at 42 (where evidence supports such a procedure, individual wealth of each defendant is admissible).

We conclude that the evidence in this case does not support such a submission, because, as stated above, the tortious acts were clearly performed within the scope of partnership authority and business. Thus, the single sum verdict and judgment as to punitive and compensatory damages was proper. It is appropriate to note that there was no evidence at trial of the individual wealth of the separate defendants. Such evidence is, of course, inadmissible when a single submission as to punitive damages is made, as is the circumstance here.

The judgment is affirmed.