Erik Thomas PETERSON, by his next friend Victor PETERSON, Victor Peterson and Geneva Peterson, Appellants,

v.

## GENERAL MOTORS CORPORATION, Appellee.

### No. 89–1727.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1990.

Decided May 31, 1990.

Rehearing and Rehearing En Banc Denied July 11, 1990.

William H. McDonald, Springfield, Mo., for appellants.

Rodney E. Loomer, Springfield, Mo., for appellee.

Before ARNOLD and BOWMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Erik Peterson, Geneva Peterson, and Victor Peterson appeal from a judgment entered on a jury verdict in favor of General Motors Corporation (GMC) in their action for personal injury damages. Erik and Geneva Peterson were struck in a K–Mart parking lot by a 1985 Oldsmobile Calais designed and manufactured by GMC. Appellants sued on the theory that a defect in the Calais caused it to accelerate rapidly and uncontrollably when put into reverse. Appellants argue on appeal that the District Court [1] made numerous trial errors

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

including (1) admitting into evidence certain photographs and a video depicting the scene of the accident; (2) excluding evidence of GMC customer complaints; (3) limiting the number of admissible similar incidents to five; (4) excluding internal GMC documents that pertained to a body frame other than that of the Calais; (5) allowing police officer Rick Richards to testify regarding his experience with similar accidents; (6) instructing the jury not to consider the theory of pedal overlap; and (7) excluding the testimony of a rebuttal witness. In addition, appellants claim that the verdict was against the weight of the evidence, a new trial should be granted because of juror misconduct, and the District Court erred in denying their motion to vacate the judgment in light of newly discovered evidence. We affirm.

This action arises out of a very serious accident. On April 26, 1986, a 1985 Oldsmobile Calais, its driver at the wheel, accelerated rapidly out of its parking stall in a K–Mart parking lot. It traveled approximately 50 feet in a wide arc and collided with a Ford Escort. The Calais continued on its destructive path, striking another vehicle and two pedestrians—appellants Erik and Geneva Peterson. Erik suffered extensive injuries and will require round-the-clock nursing care for the remainder of his life. The driver of the Calais, seventy-six-year-old Florence Ratcliff, testified that she started her vehicle, placed her foot on the brake pedal, shifted the car into reverse, and began backing out of her parking stall. The car suddenly "shot out" from under her and she was unable to bring it under control even though she pressed on the brake pedal as hard as she was able. Immediately following the accident, Mrs. Ratcliff told several witnesses, including a police officer investigating the accident, that "the harder she pressed the faster [the car] went." Trial Transcript at 460.

Appellants contended at trial that a defect in the Calais's computer system allowed a random burst of electromagnetic energy to corrupt the car's computer memory and cause the idle air control valve (IACV) to open completely. With the IACV fully open, enough air and fuel entered the engine to increase its revolutions per minute (rpms) and cause the vehicle to surge backwards when put into reverse. Appellants maintained that Mrs. Ratcliff was unable to control the car because the initial acceleration was so startling and the g-force pressure prevented her from applying sufficient pressure to the brakes.

GMC countered that the Calais's computer system was designed to filter out electromagnetic energy and could not be corrupted in the manner that appellants asserted. GMC engineers testified that had the IACV been fully open during the incident, the police officer who tested the Calais shortly thereafter would have noticed an abnormally high idle speed. GMC presented evidence demonstrating that the small diameter of the idle air control port ensured that only a limited amount of air could enter the engine even with the valve fully open. Testing done after the accident by appellants' own expert indicated that with the valve wide open and the car at maximum idle, the Calais reached a speed of only 10.5 miles per hour after traveling forty-nine feet. This figure is considerably lower than the estimated speed of the Calais at the time it collided with either of the two parked vehicles and the speeds eyewitnesses testified that the Calais was traveling. Moreover, GMC engineers testified that even at maximum idle, a mere thirty pounds of pressure on the brakes, which can be applied by an average person with his or her thumbs, would bring the Calais to a complete stop. GMC contended that the only possible explanation for the accident was that Mrs. Ratcliff inadvertently placed her foot on the accelerator rather than the brake prior to shifting into reverse. As the vehicle picked up speed, Mrs. Ratcliff naturally applied increased pressure to what she erroneously believed was the brake pedal and the car careened around the parking lot at wide-open throttle.

The jury rejected appellants' version of the incident and found in favor of GMC on the Petersons' claims.

■ Most of the issues appellants raise attack the District Court's rulings concerning the admissibility of evidence. The District Court has broad discretion in the conduct of the trial and we will not substitute our judgment for that of the District Court unless the court has abused its discretion. *LaRO Corp. v. Big D Oil Co.*, 824 F.2d 689, 690 (8th Cir.1987). We have examined the record in this case and are satisfied that the District Court did not abuse its discretion in any of the evidentiary rulings challenged in appellants' first five claims.

■ Appellants also challenge the District Court's ruling in removing from the case the contention that Mrs. Ratcliff had her foot on the accelerator and the brake at the same time and instructing the jury not to consider evidence supporting this contention in their verdict. We disagree. At trial, appellants introduced evidence that the configuration of the accelerator and brake pedals in the Calais and the size of Mrs. Ratcliff's shoe made it possible for Mrs. Ratcliff to place her foot on both pedals. Mrs. Ratcliff, however, returned to the Calais sometime after the accident and attempted to put her foot on both the accelerator and brake pedals. She testified that, "I couldn't possibly put my foot on the brake and the gas at the same time; it could not be done," and "it hurts to do it." Trial Transcript at 727. The purpose of a withdrawal instruction is to avoid confusion on the part of the jury because of a spurious issue raised by testimony, and the decision whether to give such an instruction is left to the discretion of the trial court. *Johnson v. Richardson*, 701 F.2d 753, 756–57 (8th Cir.1983); *see Weisbach v. Vargas*, 656 S.W.2d 797, 799 (Mo.Ct.App.1983). The District Court determined that the pedal overlap theory was a potentially misleading, spurious issue and gave an appropriate withdrawal instruction. We have no difficulty holding that the District Court did not abuse its discretion in so doing, and therefore reject appellants' contention that a new trial is deserved on this ground.

■ We turn next to the District Court's decision to exclude the rebuttal testimony of appellants' witness, Dr. Bruno Schmidt.

Schmidt's testimony was offered to attack the mathematical calculations employed by Dr. Charles Moffat, GMC's accident reconstruction expert. Moffat's notes were made available to appellants almost a year before trial and Moffat testified regarding his reconstruction of the accident at the first trial of this case that ended in a hung jury approximately six months prior to the instant trial. Despite being fully aware for several months of the extent and scope of Moffat's testimony, appellants waited until the close of GMC's case to disclose Schmidt's testimony to GMC and the court. The District Court ruled that the testimony was proper rebuttal evidence but refused to allow Schmidt to testify because the offer was not timely made.

A district court traditionally has broad discretionary power to decide whether to allow the testimony of witnesses not listed prior to trial. *Harris v. Steelweld Equip. Co.*, 869 F.2d 396, 399 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989); *Blue v. Rose*, 786 F.2d 349, 351 (8th Cir.1986). "Allowance of a party to present additional evidence on rebuttal depends upon the circumstances of the case and rests within the discretion of the individual most able to weigh the competing circumstances, the trial judge." *Gossett v. Weyerhaeuser*, 856 F.2d 1154, 1156 (8th Cir.1988) (citations omitted). In the context of the instant case, where discovery closed approximately eight months prior to trial, a pretrial order required the parties to file witness and exhibit lists prior to trial, and, indeed, a full trial of the issues previously had taken place, we are satisfied that the District Court did not abuse its discretion in refusing to allow Schmidt to testify.

■ Appellants contend that because the verdict was against the weight of the evidence, the District Court erred in denying their motion for new trial. When reviewing a jury verdict to decide whether it is against the weight of the evidence, the district court conducts its own review of the evidence to determine whether a miscarriage of justice has occurred. *City of Malden v. Union Elec. Co.*, 887 F.2d 157,

161 (8th Cir.1989). The denial of a motion for new trial on this basis "is virtually unassailable on appeal," *Grogg v. Missouri Pac. R.R.*, 841 F.2d 210, 214 (8th Cir.1988), and perhaps should not be reviewable at all by an appellate court. *See Czajka v. Black*, 901 F.2d 1484, 1487 (8th Cir.1990) (and cases cited therein) (noting that in light of the Seventh Amendment, this Court may not have the power to reverse a district court's denial of a motion for new trial based on weight of the evidence grounds); *Daley v. Webb*, 885 F.2d 486, 489 (8th Cir.1989) (stating that if the trial court had denied appellant's motion for new trial, "we of course would apply a highly deferential standard of review, and perhaps should not review the District Court's ruling at all."). Setting aside these concerns, we have no difficulty holding that the District Court here did not abuse its discretion in denying appellants' motion. There was considerable evidence presented at trial supporting GMC's position and casting doubt on appellants' theory of the case. The resolution of factual conflicts is properly the role of the jury and the verdict will not be overturned by this Court.

■ Appellants next argue that a new trial should have been granted because an improper, extraneous document, a 1984 issue of "Hot Rod" magazine, was brought into the jury room during deliberations. The District Court did not specifically address this issue in its order denying a new trial, although appellants raised the claim in their motion. In all probability, the District Court found this issue as meritless as we now do, and in any event that court's failure to address this clearly meritless issue does not require a remand.

■ In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing that the materials are prejudicial to the unsuccessful party. *Neville Constr. Co. v. Cook Paint & Varnish Co.*, 671 F.2d 1107, 1112 (8th Cir.1982) (citing *Benna v. Reeder Flying Serv., Inc.*, 578 F.2d 269, 271–72 (9th Cir.1978)). The magazine at issue is devoted solely to a discussion of Chevrolet parts and does not mention the General Motors vehicle involved in this case nor discuss any component part here alleged to be defective. After reviewing the magazine's contents, we are satisfied that it does not bear upon the issues decided by the jury in this case and is not prejudicial to appellants. This claim of jury misconduct therefore provides appellants no basis for overturning the verdict.

■ Finally, appellants argue that the District Court erred in denying their motion to vacate the judgment because of newly discovered evidence. Appellants assert that a study of sudden acceleration in automobiles published subsequent to trial by the National Highway Traffic and Safety Administration (NHTSA) is evidence that entitles them to a new trial under Rule 60(b)(2) of the Federal Rules of Civil Procedure. We disagree.

■ To prevail on a motion to vacate judgment based on newly discovered evidence pursuant to Rule 60(b)(2), the moving party must show: (1) the evidence was discovered after trial; (2) he exercised due diligence to discover the evidence before the end of the trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new trial at which the evidence was introduced would probably produce a different result. *See Griffin v. FDIC*, 831 F.2d 799, 802 (8th Cir.1987). Because of the district court's opportunity to examine the evidence firsthand, we reverse the denial of a Rule 60(b)(2) motion only when the court clearly has abused its discretion. *Warner v. Transamerica Ins. Co.*, 739 F.2d 1347, 1352 (8th Cir.1984). The District Court here reviewed the NHSTA study and found that it "is not material; probably would not have been admitted at the trial in this case, and if it had been admitted, would probably not produce a different result." Order Denying Motion for New Trial and Motion to Vacate Judgment at 11. We are satisfied that the District Court did not abuse its discretion in ruling that appellants' new evidence did not warrant a new trial.

Finding no merit in any of the issues appellants have raised, we affirm the judgment of the District Court.