835 P.2d 816

**Jo Ann DUNCAN, Plaintiff–Appellant,**

v.

**M.W. HENINGTON, et al.,
Defendants–Appellees.**

**No. 19475.**

Supreme Court of New Mexico.

July 27, 1992.

Parsons & Bryant, Karen L. Parsons and Daniel A. Bryant, Ruidoso, for plaintiff-appellant.

No appearance for defendants-appellees.

OPINION

FROST, Justice.

This case presents an issue concerning liability of copartners for damages awarded for fraud and breach of contract committed by one partner in the scope and

course of partnership business. Plaintiff, Jo Ann Duncan, appeals the judgment entered in her favor. She filed suit against several defendants for fraud, unfair trade practice, and breach of contract in conjunction with her purchase of real estate in Lincoln County, New Mexico. After a bench trial, the district court awarded plaintiff compensatory damages, punitive damages, attorney fees, and costs against defendant Melvin Glenn, personally, d/b/a Roundup Realty, Inc., d/b/a P & G Investments, a New Mexico general partnership, and as a general partner of P & G for his fraudulent inducement of plaintiff to purchase property, his intentional and fraudulent breach of fiduciary duty, and his intentional and fraudulent breach of contract. The court concluded that Glenn's conduct, which occurred within the scope of the partnership business, constituted unfair or deceptive trade practice in violation of NMSA 1978, Section 57–12–3 (Repl.Pamp.1987). The court held that Glenn's copartners "committed no fraud, and damages are not recoverable against them * * * * "

■ On appeal, plaintiff contends that Glenn's copartners, defendants Bonnie Glenn, his wife, and Frank and Dorothy Pope, should be jointly and severally liable for the breach of contract under the New Mexico Uniform Partnership Act and NMSA 1978, Sections 38–4–3 and –5 (Repl.Pamp.1987), which address joint contracts and suits against partnerships. Defendants-appellees made no appearance on appeal. We affirm the judgment as it relates to Melvin Glenn, but reverse in part the trial court's refusal to impose liability upon the copartners. We hold that Glenn's copartners are liable for compensatory damages, attorney fees, and costs, but not punitive damages.

New Mexico partnerships are governed by the Uniform Partnership Act, NMSA 1978, Sections 54–1–1 to –43 (Repl.Pamp.1988). In determining which, if any, damages are to be imputed to Glenn's copartners, we look to the pertinent provisions of the Act:

54–1–13: Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

54–1–14: The partnership is bound to make good the loss: A. where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and B. where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership.

54–1–15: All partners are liable: A. jointly and severally for everything chargeable to the partnership under Sections 13 and 14; B. jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.

Clearly, under Section 54–1–13, the partnership is liable for the loss caused by the fraud committed on plaintiff by Glenn. *See, e.g., Bergh v. Mills*, 763 P.2d 214, 217 (Wyo.1988) ("The effect of [Section 13] of the Uniform Partnership Act is to impose individual liability against the members of a partnership when another partner commits a tortious act within the scope of partnership business."). Section 54–1–14 further holds the partnership responsible for plaintiff's damages in connection with the breach of contract claim, which the court ruled was based on Glenn's failure to apply plaintiff's payments to the underlying real estate contract. Thus, under Section 54–1–15, Glenn and his copartners are liable jointly and severally for the amount of compensatory damages, attorney fees, and costs awarded to plaintiff. *See Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 727–28, 779 P.2d 99, 104–05 (1989) (liability of partners is joint and several for compensatory damages).

■ With regard to the question of punitive damages in the context of a part-

nership, we look both to the Uniform Partnership Act and our common law on principal-agency and master-servant relationships in relation to vicarious and derivative liability. Under the Uniform Partnership Act, Section 13 is the only section under which punitive damages could be imposed against copartners since Section 14 merely limits a partnership's liability to restitution. We are mindful that, in general, statutes in derogation of the common law are to be construed strictly. *In re Estate of Cruse*, 103 N.M. 539, 542, 710 P.2d 733, 736 (1985). Under this standard, a court will not find the common law superseded unless it appears that it was the legislative intent, which is to be determined primarily by the language of the statute itself. *State ex rel. Stratton v. Roswell Indep. Schs.*, 111 N.M. 495, 500, 806 P.2d 1085, 1090 (Ct.App. 1991).

■■■ The few cases interpreting Section 13 in relation to punitive damages reach conflicting results. *See* Michael A. Rosenhouse, Annotation, *Derivative Liability of Partner For Punitive Damages For Wrongful Act of Copartner*, 14 A.L.R.4th 1335 (1982). As noted in *Hayes v. Quincy (In re WPMK Corp.)*, 59 B.R. 991 (D.Hawaii 1986), "[t]his conflict, however, appears to derive from the individual state's common law treatment of vicarious liability for punitive damages." *Id.* at 996 n. 3.

Jurisdictions holding a partnership vicariously liable for punitive damages base their rule in their respective common law of derivative liability. In Maryland, for example, the law is viewed liberally and liability is imputed to the master for the tort of the servant simply because the servant was acting in the course of the master's service, for the master's benefit, and within the scope of employment. *See Meleski v. Pinero Intern. Restaurant, Inc.*, 47 Md.App. 526, 424 A.2d 784, 792 (1981). According to the court in *Meleski*, "it appears the Uniform Partnership Act did not change the common law rules of vicarious liability in Maryland." *In re WPMK Corp.*, 59 B.R. at 996 n. 3.

Under Missouri's general principles of agency and partnership law, all partners can be held jointly liable for punitive damages despite a copartner's lack of culpability. *Blue v. Rose*, 786 F.2d 349, 352–53 (8th Cir.1986). The determination of liability simply turns on whether the act was done within the scope of the wrongdoing partner's authority. *Rogers v. Hickerson*, 716 S.W.2d 439, 447 (Mo.Ct.App.1986) (award of punitive damages against non-culpable copartner was appropriate in view of fact that commission of wilful tort by partner was committed within scope of wrongdoing partner's authority). It is unnecessary to show that the non-culpable partner had knowledge of the fraudulent conduct or that the conduct was ratified. *Id.; see also Collins v. Adams Dairy Co.*, 661 S.W.2d 603, 606 (Mo.Ct.App.1983) (punitive damages may be awarded against corporate defendant for wrongful acts of its agent committed in course of agency and by virtue of agent's authority) (quoting *Fischer v. MAJ Inv. Corp.*, 631 S.W.2d 902, 906 (Mo.Ct.App.1982)). Missouri's common law, which holds a master liable for a tort committed by one's servant, "does not require a finding of prior authorization or subsequent ratification before an individual employer will be held liable in punitive damages for the torts committed by his employees within the scope and course of their employment and in furtherance of the employer's business." *Johnson v. Allen*, 448 S.W.2d 265, 269–70 (Mo.Ct.App.1969).

New Mexico's approach to punitive damages is similar to that of Hawaii and Indiana. *See In re WPMK Corp.* and *Husted v. McCloud*, 436 N.E.2d 341 (Ind. App.1982), *vacated by* 450 N.E.2d 491 (Ind. 1983). We subscribe to the view that "[t]he purpose of punitive damages is to punish the wrongdoer and to deter the wrongdoer and others in a similar position from such misconduct in the future." *Conant v. Rodriguez*, 113 N.M. 513, 517, 828 P.2d 425, 429 (Ct.App.1992). In *Husted*, the lower court's ruling to apply Section 13 to find innocent partners liable for punitive damages was reversed on appeal. The Indiana Supreme Court based its decision on the state's common law rationale behind punitive damages, which prohibits liability against one who is innocent of wrongdoing since an award of punitive damages is in-

tended to punish the wrongdoer and deter others from engaging in similar conduct. 450 N.E.2d at 495. Applying a similar rationale as employed in *Husted,* the Hawaii court in *In re WPMK Corp.* decided that innocent partners are not liable for punitive damages unless it could be shown "that the partnership authorized, ratified, controlled, or participated in the alleged tortious activity." 59 B.R. at 997.

" 'The rule [on derivative liability] is well established in New Mexico that the principal, or master, is liable for punitive or exemplary damages *only* in cases where the principal or master has in some way authorized, participated in or ratified the acts of the agent or servant, which acts were wanton, oppressive, malicious, fraudulent or criminal in nature.' " *Samedan Oil Corp. v. Neeld,* 91 N.M. 599, 601, 577 P.2d 1245, 1247 (1978) (quoting *Couillard v. Bank of N.M.,* 89 N.M. 179, 181, 548 P.2d 459, 461 (Ct.App.1976)). This rule supported the holding in *Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 773 P.2d 1231 (1989), a defamation case in which we reversed an employer's liability for punitive damages due to the employee's tort. "[A] master or employer is liable for punitive damages for the tortious act of an employee acting within the scope of his [or her] employment *and* where the employer in some way participated in, authorized or ratified the tortious conduct of the employee." *Id.* at 431, 773 P.2d at 1238 (citing *Samedan Oil Corp.*).

Our law is consistent with the rule set out by the United States Supreme Court in the seminal case of *Lake Shore & Michigan Southern Railway Co. v. Prentice,* 147 U.S. 101, 107, 13 S.Ct. 261, 262, 37 L.Ed. 97 (1893), that punitive damages can only be awarded against one who has participated in the offense. *Samedan,* 91 N.M. at 601, 577 P.2d at 1247. In other words, "a master or principal is not liable for punitive damages unless it can be shown that in some way he also has been guilty of the wrongful motives upon which such damages are based." *Id.* at 602, 577 P.2d at 1248.

In *Meleski,* unlike the case at bar, the court held there was sufficient evidence for the jury to have found that the partners ratified or authorized the fraudulent acts. Here the court specifically found that the copartners, Mrs. Glenn and the Popes, "committed no fraudulent acts." Accordingly, absent a finding of ratification, authorization, or participation in the fraudulent conduct, punitive damages may not be recovered from copartners for one partner's fraudulent conduct.[1] Glenn, his wife, and Mr. and Mrs. Pope, as partners in P & G Investments are liable to plaintiff jointly and severally for the award of compensatory damages, attorney fees, and costs; however, only Glenn is liable to plaintiff for the award of punitive damages.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.

---

1. In *Gallegos* this court prescribed that the determination as to the liability for punitive damages must be made separately when two or more defendants are involved. 108 N.M. at 728, 779 P.2d at 105.