868 P.2d 1307 (1994)
117 N.M. 82
CHARTER SERVICES, INC., a New Mexico corporation, Plaintiff-Appellee/Cross-Appellant,
v.
PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, formerly Bankers Life Insurance Company, Defendant-Appellant/Cross-Appellee.
No. 13774.
Court of Appeals of New Mexico.
January 12, 1994.
Certiorari Denied February 18, 1994.
*1309 Turner W. Branch, The Branch Law Firm, Albuquerque, for plaintiff-appellee/cross-appellant.
Joseph J. Mullins, Edward Ricco, James P. Bieg, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellant/cross-appellee.

OPINION
APODACA, Judge.
Principal Mutual Life Insurance Company (Defendant) appeals and Charter Services, Inc., (Plaintiff) cross-appeals a judgment after a bench trial. The judgment awarded Plaintiff damages for negligent misrepresentation involving the purchase of a group health insurance policy from Defendant. In its appeal, Defendant raises the following issues: (1) whether the trial court erred in not apportioning Plaintiff's damages consisting of attorney fees expended in defending against Plaintiff's former employee's lawsuit for workers' compensation and for wrongful discharge; and (2) whether the trial court erred in awarding as damages certain legal costs and expenses allegedly paid directly by Plaintiff in defending against the lawsuit of its former employee. Defendant has expressly abandoned another issue listed in its docketing statement. In its cross-appeal, Plaintiff challenges the trial court's refusal to award punitive damages and prejudgment interest. We affirm on issue (1) and reverse and remand for a new hearing on issue (2) in Defendant's appeal. We affirm on the issues raised in Plaintiff's cross-appeal.

FACTS
Allen Weh was president and principal officer of Plaintiff. James Straus was an agent of Defendant. In August and September of 1983, Weh and Straus discussed the purchase of a group medical insurance policy to cover Plaintiff's employees. The trial court found that, during these discussions, Straus advised Weh that the comprehensive major medical insurance policy offered by Defendant would cover on-the-job injuries suffered by Plaintiff's employees, and that, if Plaintiff bought the policy, it was not necessary to buy a separate workers' compensation insurance policy. This advice was incorrect. The trial court also found that Weh relied on Straus' misrepresentations in deciding to buy Defendant's policy, and that Plaintiff allowed its workers' compensation policy to lapse.
In November 1985, Kathleen Shores, an employee of Plaintiff, was injured at work. Shores informed Defendant's claims office of the injury but was told that the policy would not cover the injury because it was work-related. Plaintiff, having discontinued its workers' compensation insurance, paid Shores' medical expenses in the amount of $5,744.90 and made workers' compensation equivalent payments to her of $8,170.30. Shortly after recovering from her injury and returning to work, Shores was discharged by Plaintiff, allegedly for substandard performance. Shores sued Plaintiff, asserting claims for both workers' compensation and wrongful discharge. Plaintiff moved to dismiss the wrongful discharge claim on the *1310 ground that Shores was limited to a remedy under the Workers' Compensation Act. The matter was eventually appealed to our Supreme Court. See Shores v. Charter Servs., Inc., 106 N.M. 569, 746 P.2d 1101 (1987). The entire proceedings in Shores, including the appeal and proceedings on remand, shall be referred to as the Shores lawsuit. The Supreme Court held that Shores was required to elect to pursue either her workers' compensation claim or her wrongful discharge action. Id. at 570, 746 P.2d at 1102. Shores elected to pursue her workers' compensation claim.
The Shores lawsuit had been remanded but had not gone to trial when the present case was tried in June 1989. Despite its pronouncement in a letter decision that any attorney fees or costs incurred in connection with Shores' wrongful discharge count should be excluded from Plaintiff's recoverable damages, the trial court ultimately concluded that Defendant was liable to Plaintiff for "all damages resulting from the misrepresentations, including all of its damages in [the Shores lawsuit] such as workers' compensation benefits, medical benefits and the costs of defending that action." Plaintiff's damages could not be qualified until the conclusion of the Shores lawsuit.
The Shores lawsuit concluded in August 1990 with entry of a judgment awarding Shores workers' compensation benefits. At an August 1990 post-trial hearing on damages in this case, Defendant agreed that the judgment in the Shores lawsuit should be incorporated into the judgment to be entered against Defendant as part of Plaintiff's damages. Other elements of Plaintiff's damages, including the attorney fees incurred by Plaintiff in defending against the Shores lawsuit, remained unresolved. On July 9, 1991, the trial court held another post-trial damages hearing in this case. Plaintiff presented evidence that its total attorney fees in the Shores lawsuit amounted to $41,034.30. Weh could not identify the portion of that amount relating to defense of the workers' compensation claim before Shores' election to pursue that remedy pursuant to our Supreme Court's mandate. Defendant argued that Plaintiff had not met its burden of allocating the fees paid to its attorneys in the Shores lawsuit between those related to the workers' compensation claim and those related to the wrongful discharge claim. Contrary to the trial court's prior letter decision allowing recovery of only those expenses related to the workers' compensation claim, the trial court stated that, if the fees could not be apportioned between the two claims, then the entire amount would be allowed as damages.
Plaintiff also requested that the judgment include an award of $8,987.95 for legal costs and expenses associated with the Shores lawsuit that were paid directly by Plaintiff, over and above the $41,034.30 paid in attorney fees. The trial court did not make any finding on this claimed element of damages. After the July 9, 1991, hearing, Frederick M. Mowrer, the judge who presided over the trial, retired from the bench without making any additional findings or conclusions and without entering judgment. A successor judge, Robert L. Thompson, was assigned to the case. Two hearings were held before Judge Thompson in December 1991 to address entry of judgment. Defendant objected to inclusion of the $8,987.95 amount in the judgment, both because the amount had not been adequately proven and because Judge Mowrer had made no finding on which Judge Thompson could enter judgment.
The trial court awarded Plaintiff judgment against Defendant. The judgment included an award of $41,034.30 for attorney fees incurred in defending the Shores lawsuit, and $8,987.95 for Plaintiff's direct legal costs and expenses in that lawsuit. The trial court denied Plaintiff's requests for punitive damages and prejudgment interest.

DEFENDANT'S APPEAL
Defendant argues that the trial court erred in awarding as damages the total amount of Plaintiff's attorney fees incurred in defending the Shores lawsuit. Relying on Economy Rentals, Inc. v. Garcia, 112 N.M. 748, 819 P.2d 1306 (1991), Defendant contends that the fees incurred by Plaintiff in *1311 defending against Shores' unlawful discharge claim should have been excluded. In Economy Rentals, Inc., our Supreme Court held that, when an attorney's services are rendered in pursuit of multiple objectives, some of which permit a fee and some of which do not, the trial court must apportion the fees and award only those that are compensable. Id. at 765, 819 P.2d at 1323. We reject Defendant's argument because we disagree with its premise that Plaintiff's legal expenses in defending against Shores' wrongful discharge claim were not compensable.
Defendant does not claim that the trial court's letter decision disallowing the fees for defending the wrongful discharge claim controls over the court's later conclusion to the contrary. See Sheets v. Sheets, 106 N.M. 451, 456, 744 P.2d 924, 929 (Ct.App.1987) (language contained in trial court's decision that is not carried forward in judgment is of no effect). Rather, Defendant asserts that the trial court misapplied the law in awarding damages unrelated to Plaintiff's defense of Shores' workers' compensation action.
"Negligent misrepresentation is an action governed by the general principles of the law of negligence." R.A. Peck, Inc. v. Liberty Fed. Sav. Bank, 108 N.M. 84, 88, 766 P.2d 928, 932 (Ct.App.1988); accord Ruiz v. Garcia, 115 N.M. 269, 274, 850 P.2d 972, 977 (1993). Damages for negligent misrepresentation are those proximately caused by the misrepresentation. See First Interstate Bank v. Foutz, 107 N.M. 749, 751, 764 P.2d 1307, 1309 (1988); SCRA 1986, 13-1632 (Repl.1991). "Proximate cause is that which in a natural and continuous sequence unbroken by any new independent causes produces the injury and without which the injury would not have occurred." Pittard v. Four Seasons Motor Inn, Inc., 101 N.M. 723, 730, 688 P.2d 333, 340 (Ct.App.), cert. quashed, 101 N.M. 555, 685 P.2d 963 (1984). Defendant contends that, because its actions had nothing to do with Shores' wrongful discharge claim, Plaintiff's fees in defending against that claim were not proximately caused by Defendant's misrepresentations. In support of its position, Defendant cites evidence that Shores was discharged for poor job performance. Weh also conceded at trial that Defendant was not responsible for Shores' discharge.
We fully appreciate Defendant's arguments. However, the facts do not support those arguments. We so conclude because the gist of Shores' wrongful discharge claim was that she was fired in retaliation for filing her workers' compensation action. Our Supreme Court recognized this basis for Shores' allegation by stating in its factual recitation that "[t]he complaint also alleged that Shores entered into an oral contract of employment with [Plaintiff] and that she was terminated in retaliation for her injury." Shores, 106 N.M. at 569, 746 P.2d at 1101 (emphasis added); cf. Varney v. Taylor, 79 N.M. 652, 654, 448 P.2d 164, 166 (1968) (law of the case doctrine). Plaintiff (the defendant in the Shores lawsuit) would have naturally defended against the retaliatory discharge allegation by claiming that Shores was terminated for reasons other than for having filed a workers' compensation claim. Plaintiff should not be taken to task for advancing this defense theory against a claim alleging retaliatory discharge. One cannot escape the conclusion that, but for Straus' misrepresentations, Plaintiff would have had workers' compensation coverage. If Plaintiff had had workers' compensation coverage, Shores would not have had to file her claim for compensation benefits and retaliatory discharge, and Plaintiff would not have expended any of the costs involved in the Shores lawsuit. Under these circumstances, we conclude that all of Plaintiff's costs in defending against the Shores lawsuit flowed directly from Straus' misrepresentations concerning the policy. See Topmiller v. Cain, 99 N.M. 311, 314, 657 P.2d 638, 641 (Ct.App.1983) (compensatory damages recoverable if they proximately result from violation of legally recognized right of person seeking damages). We thus conclude that the trial court did not err in determining that all of Plaintiff's legal costs expended in the Shores lawsuit were recoverable.
*1312 Defendant's second issue on appeal is whether Judge Thompson erred in awarding Plaintiff $8,987.95 in legal costs and expenses paid directly by Plaintiff in defense of the Shores lawsuit. Defendant argues that the award was not supported by substantial evidence. Defendant also contends that Judge Thompson could not enter judgment for this element of damages because he did not hear the case. Plaintiff argues that the award was supported by substantial evidence, and that Judge Thompson could so act. We consider Defendant's second point persuasive, and reverse and remand on that basis.
When a judge retires or becomes disabled after findings and conclusions have been entered, a successor judge may perform additional duties that may be required. Grudzina v. New Mexico Youth Diagnostic & Dev. Ctr., 104 N.M. 576, 580, 725 P.2d 255, 259 (Ct.App.), cert. quashed, 104 N.M. 460, 722 P.2d 1182 (1986); see also SCRA 1986, 1-063 (Repl.1992). However, a successor judge who has not heard any of the evidence cannot, over objection, enter findings of fact and conclusions of law upon which a judgment can be based. Grudzina, 104 N.M. at 581, 725 P.2d at 260.
Defendant objected to Judge Thompson's entry of judgment for Plaintiff's claimed direct legal costs. Plaintiff contends an exception to the above-noted rule regarding findings and conclusions applies to the facts of this case because Judge Mowrer entered findings and conclusions that Plaintiff was entitled to the costs of defending the Shores lawsuit prior to leaving the bench. Nevertheless, as demonstrated by Defendant in its reply brief, Judge Mowrer made no finding concerning direct costs incurred by Plaintiff in defense of the Shores lawsuit. While Judge Mowrer heard the evidence concerning Plaintiff's direct costs, it was Judge Thompson who actually decided the matter. The proper procedure would have been for Judge Thompson to have adduced evidence on the question of these costs. Because Defendant objected to Judge Thompson deciding the matter of Plaintiff's entitlement to direct costs, we must vacate that portion of the judgment and remand for a new hearing on that question. See Pritchard v. Halliburton Servs., 104 N.M. 102, 106, 717 P.2d 78, 82 (Ct.App.), cert. denied, 103 N.M. 798, 715 P.2d 71 (1986).

PLAINTIFF'S CROSS-APPEAL

1. Punitive Damages.

Plaintiff argues that the trial court erred in denying its request for punitive damages. In his letter decision, Judge Mowrer stated that Straus' misrepresentation was negligent but did not rise to the level of malicious, fraudulent, intentional, reckless, or wanton conduct. He also stated that Defendant did not act in bad faith based upon its failure to pay or investigate Shores' claim under the medical policy because Shores never filed a medical claim. The trial court denied Plaintiff's requested findings of fact and conclusions of law to the effect that Defendant's actions were grossly negligent and in bad faith. See Empire W. Cos. v. Albuquerque Testing Lab., Inc., 110 N.M. 790, 794, 800 P.2d 725, 729 (1990) (refusal by trial court to accept requested finding regarded on appeal as finding against party bearing burden of proof on issue at trial).
The purpose of punitive damages is to punish the wrongdoer and to serve as a warning to others. Conant v. Rodriguez, 113 N.M. 513, 517, 828 P.2d 425, 429 (Ct.App. 1992). Malicious, fraudulent, oppressive, or reckless conduct with a wanton disregard for the plaintiff's rights will support an award of punitive damages. Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd., 113 N.M. 9, 14-15, 820 P.2d 1323, 1328-29 (1991). A punitive damage award is discretionary with the trial court and will be upheld if supported by substantial evidence. Jackson Nat'l Life Ins. Co. v. Receconi, 113 N.M. 403, 419, 827 P.2d 118, 134 (1992). The findings of fact, however, must satisfy the legal standards for the award of punitive damages. Id. Plaintiff asserts that Defendant is liable for punitive damages on two grounds: (1) that Defendant acted in bad faith; and (2) that Defendant ratified the conduct of its agent. We discuss each ground separately.
*1313 Plaintiff's claim that Defendant acted in bad faith is grounded in Defendant's refusal to pay Shores' claim even after learning that Straus had misrepresented coverage. Defendant counters that Plaintiff abandoned its claim of bad faith, and in any event, there was substantial evidence that Defendant did not act in bad faith. It is true, as argued by Plaintiff, that "bad faith" appears to be a hybrid action, not exclusively grounded in either contract or tort. See Jessen v. National Excess Ins. Co., 108 N.M. 625, 627, 776 P.2d 1244, 1246 (1989). However, the concept of bad faith failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy. See American Employers' Ins. Co. v. Crawford, 87 N.M. 375, 379, 533 P.2d 1203, 1207 (1975). We do not understand Plaintiff to argue that Defendant was obligated to pay Shores' claim under the terms of the policy. Indeed, the policy specifically excluded work-related injuries.
It was Straus' misrepresentation that the policy would cover on-the-job injuries that formed the basis of Plaintiff's action for negligent misrepresentation, not the claim that Defendant was legally obligated to respond under the policy. Nor did Plaintiff submit any requested findings or conclusions on breach of contract based on Defendant's refusal to pay under the policy. See Concerned Residents for Neighborhood Inc. v. Shollenbarger, 113 N.M. 667, 671, 831 P.2d 603, 607 (Ct.App.1991) (fact that party abandoned all theories but one shown by its requested findings and conclusions), disapproved of by Regents of Univ. of N.M. v. Hughes, 114 N.M. 304, 310, 838 P.2d 458, 464 (1992). Instead, Plaintiff's claim of bad faith apparently was based on Defendant's refusal to pay everything demanded as a result of Straus' misrepresentations. However, absent any contractual obligation to pay under the policy, we do not believe the concept of bad faith comes into play.
There is a second basis for holding against Plaintiff on this point. Even if Plaintiff could recover punitive damages for Defendant's alleged bad faith failure to pay, we believe there was substantial evidence from which the trial court could have concluded that Defendant did not act in bad faith. "Bad faith means a frivolous or unfounded refusal to pay." Chavez v. Chenoweth, 89 N.M. 423, 429, 553 P.2d 703, 709 (Ct.App.1976). Because the policy here excluded benefits for work-related injuries, the trial court could have concluded that Defendant's refusal to pay was not unfounded and that there was no bad faith. See also Jackson Nat'l Life Ins. Co., 113 N.M. at 419, 827 P.2d at 134 (unfounded failure to pay means "total lack of foundation for an assertion of nonliability"). There was also evidence that Defendant did not know, before trial, that Straus had made the representations testified to by Weh. Robert Mrizek, Defendant's in-house counsel, testified that he "didn't see anything in [Straus' letter to Defendant] to indicate that [Straus] represented that Defendant Mutual was a workers' comp carrier and that our coverage was workers' comp coverage to Plaintiff Services." Additionally, Defendant actually offered to reimburse Plaintiff for the medical benefits Plaintiff had paid Shores.
Because Defendant was not contractually obligated to pay under the policy, it follows that Plaintiff cannot prevail on its claim that Defendant acted in bad faith by denying Shores' claim without adequate investigation. The policy did not provide coverage for Shores' injuries. Although the trial court based its determination of a lack of bad faith on Shores' failure to file a claim, we will affirm the trial court if it was right for any reason. See State v. Beachum, 83 N.M. 526, 527, 494 P.2d 188, 189 (Ct.App.1972).
We next address Plaintiff's second groundthat Defendant was liable for punitive damages based on its ratification of Straus' conduct. As in its bad faith claim, Plaintiff bases its ratification claim on Defendant's refusal to pay after learning of Straus' misrepresentation. Defendant first counters that the evidence supported a finding that Defendant failed to ratify Straus' conduct. *1314 Defendant next contends that the trial court could reasonably conclude that Straus' conduct, even if ratified by Defendant, was not sufficiently aggravated to support an award of punitive damages. Because we agree with Defendant's second argument, we do not address the first.
A principal is liable for punitive damages when it authorizes, participates in, or ratifies the act of its agent. Samedan Oil Corp. v. Neeld, 91 N.M. 599, 601, 577 P.2d 1245, 1247 (1978); accord Duncan v. Henington, 114 N.M. 100, 103, 835 P.2d 816, 819 (1992). However, the actions ratified by the principal must themselves justify punitive damages. See Couillard v. Bank of New Mexico, 89 N.M. 179, 181, 548 P.2d 459, 461 (Ct.App.1976); see also Duncan, 114 N.M. at 103, 835 P.2d at 819.
The trial court determined that Straus' conduct did not constitute gross negligence. In support of its contention that Straus was grossly negligent, Plaintiff relies on evidence that Straus advised Weh concerning the need for workers' compensation insurance despite never having read the Workers' Compensation Act. We believe the trial court's conclusion to the contrary was supported by substantial evidence. The basis of Plaintiff's complaint was that Straus misinterpreted the policy offered by Defendant as covering work-related injuries. Even Plaintiff's own expert characterized the policy language as ambiguous. There was also evidence that the language was subsequently clarified by Defendant. Finally, Plaintiff's action was for negligent, not intentional, misrepresentation. Given these facts, we believe it was reasonable for the trial court to conclude that Straus' misinterpreting the policy as covering on-the-job injuries did not constitute gross negligence. See Kueffer v. Kueffer, 110 N.M. 10, 13, 791 P.2d 461, 464 (1990) (former husband's interpretation of ambiguous contract, while mistaken, was not intentionally malicious, oppressive, reckless, or in wanton disregard of wife's rights so as to render husband liable for punitive damages); SCRA 1986, 13-1827 (Repl.1991) (gross negligence is an act or omission done without the exercise of even slight care under the circumstances). We conclude that the trial court's refusal to award punitive damages to Plaintiff was not error.

2. Prejudgment Interest.

Plaintiff argues that the trial court abused its discretion in failing to award prejudgment interest. In denying Plaintiff's motion, the trial court noted the "great lapse of time" since the initiation of action in September 1986.
The award of prejudgment interest pursuant to NMSA 1978, Section 56-8-4(B) (Repl.1986), is discretionary with the trial court. Southard v. Fox, 113 N.M. 774, 776, 833 P.2d 251, 253 (Ct.App.1992). The statute applies to all actions, including tort actions in which damages are not reasonably ascertainable before trial. Id. at 776-77, 833 P.2d at 253-54. Although an award of prejudgment interest is discretionary with the trial court, it should be awarded as a matter of right where the defendant has breached a contract to pay a definite sum of money. Ranch World v. Berry Land & Cattle Co., 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990).
We initially reject Plaintiff's contention that the trial court was required as a matter of law to award it prejudgment interest because the damages were readily ascertainable. See Grynberg v. Roberts, 102 N.M. 560, 562, 698 P.2d 430, 432 (1985). We believe Plaintiff's reliance on Grynberg is misplaced. Grynberg was decided under NMSA 1978, Section 56-8-3 (Cum.Supp.1984), the predecessor to NMSA 1978, Section 56-8-3 (Repl.1986), rather than under Section 56-8-4 or its predecessor. Because Grynberg involved money due on a contract, it is not applicable to the facts of this case, which involves damages for negligent misrepresentation. Nor do we believe that the trial court was required to make findings concerning the factors set forth in Section 56-8-4(B)(1) and (2). The statute itself does not require findings. Cf. Jaramillo v. Jaramillo, 103 *1315 N.M. 145, 148, 703 P.2d 922, 925 (Ct.App. 1985) (court must adopt evidentiary findings, rather than only findings of ultimate fact, where a statute so requires). Otherwise, the trial court is only required to make findings of ultimate fact. Id.; but see Ranch World, 110 N.M. at 404, 796 P.2d at 1100 (trial court abused its discretion in denying prejudgment interest without making any findings justifying denial).
Despite the lack of specific findings, having reviewed the record, we are satisfied that the trial court properly exercised its discretion in denying prejudgment interest. The trial court held two hearings on the matter. The court expressed its concern with the lapse of time since the filing of the complaint. The delay in bringing the case to its conclusion could properly be attributed to Plaintiff. See § 56-8-4(B)(1) (trial court to consider whether plaintiff was cause of unreasonable delay in the adjudication of its claims). This action could not be brought to a final conclusion until damages in the Shores lawsuit were quantified. The trial court recognized that Defendant "had no control over the amount of time that it took to get [the] workmen's compensation case through." Additionally, although the final judgment in the Shores lawsuit was presented to the trial court in this case on August 20, 1990, the hearing to determine damages was not held until July 9, 1991, and judgment was not entered until January 2, 1992. Plaintiff also rejected Defendant's pre-trial settlement offer on the ground that the damages in the Shores lawsuit were too uncertain. Under these circumstances, Defendant's further pursuit of settlement might have been futile. See § 56-8-4(B)(2) (trial court to consider whether defendant had previously made a reasonable and timely offer of settlement). In summary, we hold that the trial court's decision denying Plaintiff prejudgment interest did not constitute an abuse of discretion.

CONCLUSION
We vacate the trial court's award of $8,987.95 in legal costs and expenses allegedly paid directly by Plaintiff and remand for a new evidentiary hearing on that matter, consistent with this opinion. On all other issues, the judgment is affirmed. The parties shall bear their own costs on appeal.
IT IS SO ORDERED.
BIVINS and FLORES, JJ., concur.