KANSALLIS FINANCE LTD. *vs.* DANIEL J. FERN & others.[1]

Suffolk. October 3, 1995. - January 11, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Partnership*, Attorneys, Vicarious liability. *Agency*, Attorney at law, What
constitutes, Scope of authority or employment. *Uniform Partnership
Act. Consumer Protection Act*, Vicarious liability, Damages.

Explication of concepts and principles of vicarious liability in the contexts
of agency, partnerships, and master-servant relationships [663-667],
and discussion of statutes and cases applying same [667-670].
In reply to a question of Massachusetts law certified to it by a Federal
court, this court concluded that, with respect to common law claims
seeking to hold a partnership liable for the unauthorized actions of a
partner, where the partner has the apparent authority to do the acts,
that provides a basis on which the partnership properly may be held
liable; alternatively, where there is no apparent authority, there may
yet be vicarious liability if there is evidence that the partner was acting
to benefit the partnership. [670]
In reply to a question of Massachusetts law certified to it by a Federal
court, this court concluded that, with respect to claims under G. L.
c. 93A, seeking to hold a partnership liable for the unauthorized actions
of a partner, while c. 93A permits a finding that an innocent and
uninvolved partner may be vicariously liable for the acts of another
partner, a further showing of culpability or involvement must be made
to justify an assessment of multiple damages under the statute. [671-
676]

CERTIFICATION of questions of law to the Supreme Judi-
cial Court by the United States Court of Appeals for the
First Circuit.

*James W. Murphy* (*Arthur M. Gilman* with him) for the
plaintiff.

---

[1]Richard C. Anderson, Robert J. Donahue, and Charles M. Sabatt.

*Erik Lund* (*Joseph S. Berman* with him) for Daniel J. Fern.

FRIED, J. The United States Court of Appeals for the First Circuit has certified to this court, pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981), the following two questions of State law:

> "1. Under Massachusetts law, to find that a certain act is within the scope of a partnership for the purpose of applying the doctrine of vicarious liability, must a plaintiff show, *inter alia*, that the act was taken at least in part with the intent to serve or benefit the partnership?
>
> "2. May defendants be found vicariously liable for authorized conduct by their partner that violated Mass.Gen.L. ch. 93A, even if they were entirely unaware of and uninvolved with that conduct?"

*Kansallis Fin. Ltd.* v. *Fern*, 40 F.3d 476, 481-482 (1st Cir. 1994).

In order that we may give the guidance that the Court of Appeals seeks, we offer the more extensive "discussion of relevant Massachusetts law" that the Court of Appeals invites in its certification order. See generally Wilkins, Certification of Questions of Law: The Massachusetts Experience, 74 Mass. L. Rev. 256 (1989).

The questions arise out of an appeal by Kansallis Finance Ltd. (plaintiff) from a trial in the United States District Court for the District of Massachusetts. The Court of Appeals stated that the first question concerns an issue on which an apparent conflict exists in Massachusetts precedent, and that the second question concerns a separate issue on which there is no controlling Massachusetts precedent.

## I.

We summarize the facts relevant to the questions certified. See S.J.C. Rule 1:03, § 3 (2). Stephen Jones and the four defendants were law partners in Massachusetts when, in connection with a loan and lease financing transaction, the plain-

tiff sought and obtained an opinion letter from Jones. In the order of certification, the Court of Appeals states that the letter, executed in Massachusetts and issued on "Fern, Anderson, Donahue, Jones & Sabatt, P.A." letterhead, "contained several intentional misrepresentations concerning the transaction and was part of a conspiracy by Jones and others (though not any of the defendants here) to defraud Kansallis." Although Jones did not personally sign the letter, he arranged for a third party to do so, and both the District Court judge and the jury found that Jones adopted or ratified the issuance of the letter. Jones was later convicted on criminal charges for his part in the fraud, but the plaintiff was unable to collect its $880,000 loss from Jones or his coconspirators.

In an effort to recover its loss, the plaintiff brought suit in the District Court seeking compensation from Jones's law partners on the theory that the partners were liable for the damage caused by the fraudulent letter. Advancing the claim on essentially three grounds, the plaintiff asserted that defendants are liable for the letter because: (1) the defendants gave Jones apparent authority to issue the letter; (2) Jones acted within the scope of the partnership in issuing the letter; and (3) the issuance of the letter violated G. L. c. 93A, under which the partners are vicariously liable. The District Court submitted the first two common law claims to the jury and reserved the G.L. c. 93A (1994 ed.) count to itself. Both the judge and jury, for different reasons, decided that defendants were not liable for Jones's conduct. The Court of Appeals affirmed both the judge's and the jury's factual findings and certified two questions to this court in order to resolve the legal issues.

On the plaintiff's common law claims, the jury based their verdict on their findings that (1) Jones did not have apparent authority to issue the opinion letter[2] and (2) that his action in issuing the opinion letter was outside the scope of the part-

---

[2]The judge instructed the jury that "[t]here is no contention here that Jones had actual authority from the defendants to issue this Opinion Letter."

nership. On appeal to the Court of Appeals, the plaintiff contended that the jury based their second finding on an erroneous instruction directing that, to find Jones's actions within the scope of the partnership, the issuance of the letter must satisfy a three-prong test. It must have: (1) been "the kind of thing a law partner would do"; (2) "occurred substantially within the authorized time and geographic limits of the partnership; and" (3) been "motivated at least in part by a purpose to serve the partnership." Although the jury did not indicate which prong the plaintiff failed to satisfy, the plaintiff objected to the addition of the third prong, and it is on the correctness of including this third prong in the test that the Court of Appeals now seeks guidance. The Court of Appeals found our law on this issue unclear because it found that two decisions, *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986), and *New England Acceptance Corp.* v. *American Mfrs. Mut. Ins. Co.*, 373 Mass. 594, 597 (1977), appeared to pull in opposite directions. The Court of Appeals therefore certified this first question to us.

On the plaintiff's claim under G. L. c. 93A, the District Court based its ruling on its own independent findings of fact. In the certification, the Court of Appeals noted that, "[u]nlike the jury, [the judge] found that the partnership *had* clothed Jones with apparent authority to issue the letter on its behalf. Nonetheless, the [judge] went on to hold, as a matter of law, that 'innocent' partners may not be held vicariously liable under 93A for their partners' fraudulent acts. In other words, the [District Court] held that a partner, entirely unaware and uninvolved with another partner's fraud, is immune from vicarious liability under 93A, even when the conduct constituting fraud was authorized."[3] (Emphasis in original). The plaintiff argues that the judge based this conclusion on an erroneous premise, because "normal principles of vicarious liability as among partners should apply to make de-

---

[3]See *Wallace Motor Sales* v. *American Motor Sales Corp.*, 780 F.2d 1049, 1063-1067 (1st Cir. 1985) (no violation under Seventh Amendment to the United States Constitution where judge considering c. 93A liability made findings inconsistent with jury's finding as to contract claim).

fendants liable for Jones's fraud." The Court of Appeals found no controlling precedent to guide it on this issue, and therefore certified this second question to us.

## II.

### A.

The parties have cited to us cases from this and other jurisdictions, as well as general principles set out in the Restatement (Second) of Agency and in the Uniform Partnership Act, codified at G. L. c. 108A. Whatever difficulties this array of authorities presents may in part be attributed to the fact that the issue of vicarious liability has engendered somewhat divergent formulations in the several different contexts in which it has arisen. The genus here is agency, and two of its species, for which there are special rules for determining vicarious liability, are partnership and master-servant.

In the context of a partnership, the person acting and the persons who might be held liable for his actions usually stand on an equal footing and may be thought of as equally implicated in a joint enterprise. *Bachand* v. *Vidal*, 328 Mass. 97, 100 (1951). By contrast, the law of the vicarious liability of a master for the acts of his servant grew up in circumstances where the actor was often in a subordinate position and had a limited interest in the enterprise which he assists. See Restatement (Second) of Agency § 218 introductory note, third par. (1957). See generally W.A. Seavey, Agency § 6 (A) (1964) (explaining historical origins of the master-servant and principal-agent distinction); Restatement (Second) of Agency § 2 comment a, & § 218, Title B, Torts of Servants, introductory note (1957) (same). Yet both servants and partners are categorized as agents of their principals. See G. L. c. 108A, § 9 (1994 ed.) (Uniform Partnership Act) (partners are agents of the partnership); Restatement (Second) of Agency § 218 Title B, Torts of Servants, introductory note, fourth par. (1957) (servants are agents of their master); Restatement of Agency (Second) § 14 (A) comment a (1957) (partner is general agent for copartners and liable to copartners for any breach of fiduciary obligation); H.G. Reuschlein

& W.A. Gregory, Agency and Partnership § 184 (2d ed. 1990) (under Uniform Partnership Act, each partner agent of partnership); W.A. Seavey, Agency § 2 (B) (1964) (master and servant included in agency relation). In the partnership context, while each partner is the agent of the partnership, he also stands in the role of a principal — a reciprocity that is lacking in the master-servant relation.[4] Finally, there is an important practical distinction between determining vicarious liability for harms that come about through the victim's voluntary interactions with the purported agent — as in the case of contracts of fraud and of misrepresentation — and those that are inflicted on a victim who has made no choice to deal with the agent, as in the case of an accident, an assault, or a trespass. Only in the former instance is the inquiry into apparent authority particularly apt, because, where the victim transacts business with the agent, the victim's ability to assess the agent's authority will bear on whether and in what ways he chooses to deal with him. See *McCarthy* v. *Parker*, 243 Mass. 465, 468 (1923). By contrast, where the victim has not chosen to deal with the agent by whose act he suffers harm — as in an automobile accident — the scope of employment seems the natural determinant of vicarious liability, and that is where the concept has had its most usual application. See *Konick* v. *Berke, Moore Co.*, 355 Mass. 463, 467-468 (1969); *Porcino* v. *De Stefano*, 243 Mass. 398, 400 (1923); *Douglas* v. *Holyoke Mach. Co.*, 233 Mass. 573, 576 (1919). See generally W. Prosser & W. Keeton, Torts § 69-70 (5th ed. 1984).

Standing behind these diverse concepts of vicarious liability is a principle that helps to rationalize them. This is the principle that as between two innocent parties — the principal-master and the third party — the principal-master who for his own purposes places another in a position to do harm to a third party should bear the loss. See W.A. Seavey,

---

[4] Complicating this still further, as the District Court noted, is the circumstance that corporations and other such abstract entities can only act through agents. We discuss this circumstance in connection with the c. 93A claim.

Agency § 3 (F); W. Prosser & W. Keeton, Torts, *supra* at § 69. A principal who requires an agent to transact his business, and can only get that business done if third parties deal with the agent as if with the principal, cannot complain if the innocent third party suffers loss by reason of the agent's act. Similarly, the master who must put an instrument into his servant's hands in order to get his business done, must also bear the loss if the servant causes harm to a stranger in the use of that instrument as the business is transacted. See *McDonough* v. *Vozzela,* 247 Mass. 552, 559 (1924).

This overarching principle measures the imposition of vicarious liability in particular contexts and suggests its own limitations. Where there is actual authority to transact the very business or to do the very act that causes the harm, the agent acts as the extension of the will of his principal and the case for vicarious liability is clear. Where the authority is only apparent, vicarious liability recognizes that it is the principal who for his own purposes found it useful to create the impression that the agent acts with his authority, and therefore it is the principal who must bear the burden of the misuse to which that appearance has been put. See *Hudson* v. *Massachusetts Property Ins. Underwriting Ass'n,* 386 Mass. 450, 457 (1982) (apparent authority conferred by "conduct by the principal [that] . . . causes a third person reasonably to believe that a particular person . . . has [such] authority"); *Neilson* v. *Malcolm Kenneth Co.,* 303 Mass. 437, 441 (1939); Restatement (Second) of Agency § 8 (1957); 2 S. Williston, Contracts § 277 (3d ed. 1959). See generally H.G. Reuschlein & W.A. Gregory, Agency and Partnership § 96 (2d ed. 1990).[5] But there is little fairness in saddling the principal with liability for acts that a reasonable third party would not have supposed were taken on the principal's behalf. Similarly, where the servant acts beyond the

---

[5] While the appearance in apparent authority is measured by the standard of reasonableness, it is only those things that the principal has done to create the appearance that are so measured.

scope of his employment he is more like a thief who causes harm with an instrumentality he had no right to use.[6]

Where the wrongdoer transacts business with the victim, the authority — actual or apparent — of the agent to act on the principal's behalf may be conceptualized as the dangerous instrumentality the principal has put in the agent's hands, enabling him to do harm with it. And this creates the temptation to use the concepts of apparent authority and scope of employment interchangeably. But they are not equivalent concepts. A servant or agent may sometimes act within the scope of his master's employment and yet lack apparent authority. The clearest instances are in accident cases where the victim neither knew nor cared what the wrongdoer's relation to his employer might be. Another rarer divergence may be illustrated by the present case. The scope of employment test asks the question: is this the kind of thing that in a general way employees of this kind do in employment of this *kind*. It does not ask the different question: whether a reasonable person in the victim's circumstances *in the particular case* would have taken the agent to be acting with the principal's authority. And so there arises the possibility of vicarious liability where the victim transacted business or otherwise dealt with an agent who lacked even apparent authority in the particular matter.

In the case before us here, the jury instructions required the jury to consider both routes to vicarious liability. The jury found that Jones acted without actual or apparent authority, presumably because the form and circumstances of the letter were such that they concluded that no reasonable person in the plaintiff's position would have believed that the

---

[6]Of course today we hold the owner liable even for the acts of a thief or other wrongdoing stranger if the owner took an unreasonable risk of just that kind of misuse. See *Jesionek* v. *Massachusetts Port Auth.*, 376 Mass. 101, 105 (1978) (injury caused by misappropriated forklift negligently secured with keys in ignition); *Smith* v. *Eagle Cornice & Skylight Works*, 341 Mass. 139 (1960) (defendant negligently left axe in courtyard frequented by children; finding of causation permissible when one youth negligently injured another youth with axe).

letter was issued with the partnership's authority. But then they were asked in the alternative whether Jones "acted in the scope of the partnership." See *Bachand* v. *Vidal*, 328 Mass. 97, 100 (1951) (partners liable for tortious acts done by another partner "within the scope of the business of the firm"); *Bunnell* v. *Vrooman*, 250 Mass. 103, 106 (1924) (refusing to impose liability on copartners for one partner's tortious use of partnership property for strictly personal pleasure); *Teague* v. *Martin*, 228 Mass. 458, 461 (1917) (same). This further question was taken to ask whether writing this opinion letter was the *kind of thing* that the partnership did — even if there was no apparent authority for this particular letter. This is the alternative theory, which the District Court labeled "vicarious liability," and under this alternative the defendants might yet be liable if the jury found all three of the conditions set out above in its charge on that issue. The rationale for this possibly more extended liability recognizes an authority in each partner to take the initiative to enlarge the partnership enterprise even without the authority — actual or apparent — of his partners, so long as what he does is within the generic description of the type of partnership involved. Whatever the harshness may be of such a rule extending vicarious liability past apparent authority, it is mitigated by the third factor, requiring that the unauthorized but law partner-like act be intended at least in part to serve the partnership. Cf. *Cardullo* v. *Landau*, 329 Mass. 5, 8 (1952) (partnerships, unlike joint ventures, are formed for the transaction of general business). Since there is then some possibility that the partnership will benefit from the errant partner's act, then as between two innocent parties it is not unfair that the one whom the wrongful act may have and was meant to benefit must bear the burden of the harm.

### B.

Our cases and statutes can readily be rationalized against the background of these principles. The Uniform Partnership Act provides as general principles that: the law of agency shall apply under that chapter, G. L. c. 108A, § 4 (3); the

act of every partner apparently carrying on in the usual way the business of the partnership binds it, G. L. c. 108A, § 9 (2); and an act of the partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind it unless authorized, *id.* Where, however, by any wrongful act of a partner acting in the ordinary course of the business of the partnership, *or* with the authority of the copartners, loss or injury is caused to a third person, or a penalty is incurred, the partnership is liable therefore, G. L. c. 108A, § 13.[7]

Because the Uniform Partnership Act § 4 (3) specifically provides that the law of agency applies, it is appropriate to refer, as did the District Court in formulating its jury instructions, to the Restatement (Second) of Agency (1957). The District Court derived the second theory of liability, which it labeled vicarious liability and on which it instructed the jury regarding the scope of the partnership business, from § 228 (1) of the Restatement (Second) of Agency. Section 228 (1) provides in relevant part that conduct of a servant is within the scope of his employment, if but only if the conduct is (a) of the kind he is employed to perform, (b) within the employment's authorized time and space limits, and (c) actuated, at least in part, by a purpose to serve the master. Subsection (2) states the complementary proposition that conduct is not within the scope of employment if it is different in kind from that authorized or too little actuated by a purpose to serve the master. Section 261 states the alternative ground of vicarious liability based on apparent authority: that a principal who puts an agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud on a third party is subject to

---

[7]"Partners are the general agents of each other while transacting the partnership business and one partner is liable for the tort of another committed in the course and within the scope of the business of the firm." *Bachand* v. *Vidal*, 328 Mass. 97, 100 (1951). "But in committing a tortious act which is outside of the agency or common business a partner acts only for himself, and he alone is responsible for the consequences." *Teague* v. *Martin*, 228 Mass. 458, 461 (1917).

liability to the third party. And § 262 states the complementary proposition that a person who otherwise would be liable to another for the misrepresentations of one acting for him is not relieved from liability by the fact that the agent acts entirely for his own purposes, unless the other has notice of that. Thus, under § 262, if an agent has actual or apparent authority, the principal is not relieved of liability for that agent's misrepresentation even though the requirements of § 228(1) (c) have not been met.

The two cases which concerned the Court of Appeals may be understood in this light. *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854 (1986), a G. L. c. 93A case, did indeed require and find an intention to benefit the corporate principal as a condition of vicarious liability, but in that case we did not address and so did not negate the possibility of vicarious liability by the route of apparent authority.[8] Moreover, the harm complained of in *Wang*, which was akin to the tort of intentional interference with contractual relations, did not require for its accomplishment that the victim rely on the agent's authority, and so an analysis in terms of apparent authority would have been beside the point — every bit as much as it would be in an automobile accident or an assault. By contrast, in *New England Acceptance Corp.* v. *American Mfrs. Mut. Ins. Corp.*, 373 Mass. 594 (1977), a contract or tort case, the fraud that was worked on the plaintiff depended for its accomplishment on the plaintiff's believing that the agent was acting with his principal's authority. It is for that reason that we adopted our Appeals Court's conclusion in that case that there could be vicarious liability even though "the agents were acting entirely for their own purposes." *New England Acceptance Corp., supra* at 597. Indeed, as we have pointed out, that will usually be the case

---

[8]This court stated in *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986), that "[w]e agree that Wang cannot be held liable under G. L. c. 93A for the conduct of an employee acting outside the scope of his employment." We went on to hold that the employee's conduct had been within the scope of the employment.

where a dishonest agent misuses his apparent authority to work a fraud upon both his principal and a third party.[9]

## C.

Accordingly, if we take the first certified question to ask whether a partner must necessarily at least in part act for the benefit of the partnership if the partnership is to be liable for his actions, the answer is, "No." But the answer is "no" only because under our law — and the law of partnership and agency generally — there are two routes by which vicarious liability may be found. If the partner has apparent authority to do the act, that will be sufficient to ground vicarious liability, whether or not he acted to benefit the partnership. It is only where there is no apparent authority, which is what the jury found on the common law counts here, that there may yet be vicarious liability on the alternative ground requiring such an intent to benefit the partnership. Since there is no evidence that Jones was acting to benefit the partnership, the District Court's judgment for the defendants on the common law counts accords with our statutes and precedents. The jury instructions on the common law claims were correct.

---

[9]The approach set out here is consistent with our decision in *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814 (1983). The plaintiff had written and called the defendant's law office requesting legal assistance in regard to a possible tort claim. The letter and calls were received by a secretary who did not bring them to the defendant attorney's attention until after the statute of limitations on the plaintiff's claim had run. The plaintiff sued the attorney for malpractice on alternative theories that the secretary's actions bound her employer: (a) because the secretary was acting within the scope of her employment, and (b) because she had apparent authority to establish an attorney-client relationship. We held that, "[u]nder either theory, the question whether there was an attorney-client relationship depends on the reasonableness of the plaintiff's reliance." *Id.* at 819. This emphasis on the plaintiff's reliance interest is entirely appropriate in most cases. It is only in the rare event that the reliance, while present is not reasonable, and yet when the agent acts in part to benefit the principal, an additional reason to cast responsibility on the principal may be found. To the same effect is the decision of the First Circuit Court of Appeals in *Sheinkopf* v. *Starr*, 927 F.2d 1259 (1st Cir. 1991).

### III.

The second question asks whether there must be a finding that the partners were at all aware of or involved in Jones's misconduct before they may be held liable to Jones's victim under G. L. c. 93A. This question raises a difficulty of a different order, because it arises under a statute, c. 93A, which was designed to offer broader and more comprehensive relief to victims of dishonesty than may be available at common law. See *Nei* v. *Burley*, 388 Mass. 307, 313 (1983); *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 693 (1975); *Commonwealth* v. *DeCotis*, 366 Mass. 234, 241-242 (1974). Accordingly, it is not surprising that neither the statutory language nor our cases suggests that vicarious liability under the statute is measured by any less comprehensive standards than those we have set out above in considering the common law cause of action. The plaintiffs point out, for example, that c. 93A recoveries are routinely had against corporate defendants, all of whom, of course, have been landed in liability by the acts — often not actually authorized — of their agents. See, e.g., *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854 (1986) (employer liable for act of employee within scope of his employment); *Shaw* v. *Rodman Ford Truck Ctr., Inc.*, 19 Mass. App. Ct. 709, 712 (1985) (employer liable for conduct of salesman and sales manager); *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 305 & n.3, 322 (1988) (affirming c. 93A award against corporation for agents' deceptive conduct, noting that judgments against agents appeared uncollectible); *Computer Sys. Eng'g, Inc.* v. *Qantel Corp.*, 571 F. Supp. 1365, 1375, 1377 (D. Mass. 1983), aff'd, 740 F.2d 59 (1st Cir. 1984) (awarding c. 93A damages for agent's act).[10]

---

[10]Although c. 93A, § 9 and § 11 are distinct in that § 9 grants a cause of action to consumers and § 11 grants a cause of action to persons engaged in trade or commerce, principles established in § 9 cases often apply to § 11 cases. See *Trempe* v. *Aetna Casualty & Sur. Co.*, 20 Mass. App. Ct. 448, 458 (1985); *Refuse & Envtl. Sys., Inc.* v. *Industrial Servs. of Am., Inc.*, 932 F.2d 37, 42 n.3 (1st Cir. 1991). See also *Brennan* v. *Carvel Corp.*, 929 F.2d 801, 814 (1st Cir. 1991) ("claims brought under section 9

As G. L. c. 93A, § 1, defines "persons" subject to liability under § 11 to include both partnerships and corporations, the standard for determining liability under c. 93A is the same for both. Vicarious liability may be imposed by either of the two routes that we have set out above with respect to the common law cause of action. Neither route contains a requirement of awareness or personal involvement by the person held vicariously liable beyond that implicit in the two sets of rules themselves: (a) did the actor have apparent or actual authority for the acts on which liability is predicated, *or* (b) did the actor act within the scope of the partnership business with some intent to benefit the partnership. To the extent that either of these tests is met, there is liability under the statute.

Accordingly, the simple answer to the second question — whether a defendant may be vicariously liable under c. 93A for conduct of which it was entirely unaware and with which it was entirely uninvolved — is "Yes."

The statute does, however, by its terms make a distinction between cases where simple compensatory damages are paid to the plaintiff and where there are double or treble — that is, punitive — damages. In those latter cases, the statute requires that the court find that "the act or practice was a willful or knowing violation." Thus the Legislature envisaged multiple damage awards against those defendants with a higher degree of culpability than that sufficient to ground simple liability. See, e.g., *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 855 (1983) ("The Massachusetts Legislature consciously enacted a rule whereby the defendant's liability is measured by the degree of his culpability"); *Linthicum* v. *Archambault*, 379 Mass. 381, 388 (1979), ab-

---

are based on an important public policy, whereas section 11 claims are based primarily on private interests"). The plaintiffs also point out that many c. 93A recoveries are similarly had under § 9. See, e.g., *Whelihan* v. *Markowski*, 37 Mass. App. Ct. 209, 215 (1994); *Shawmut Community Bank, N.A.* v. *Zagami*, 30 Mass. App. Ct. 371, 375-376 (1991), *S.C.*, 411 Mass. 807 (1992), and 419 Mass. 220 (1994); *Rousseau* v. *Gelinas*, 24 Mass. App. Ct. 154, 158 (1987).

rogated in part on other grounds by *Knapp* v. *Sylvania Shoe Mfg. Corp.*, 418 Mass. 737 (1994); *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 627-628 (1978); *Wasserman* v. *Agnastopoulos*, 22 Mass. App. Ct. 672, 680-681 (1986). The Court of Appeals's query concerning awareness and involvement aptly identifies one factor bearing on the higher degree of culpability necessary for punitive damages in the context of vicarious liability.

We must, however, approach this question with some caution, lest we unsettle a large body of accepted practice under c. 93A. As we have noted, the definition section of c. 93A equates partnerships to corporations and natural persons; and § 13 of the Uniform Partnership Act makes partnerships liable for penalties incurred by an errant partner. Moreover, our cases have routinely held corporations liable for multiple damages because of the knowing and wilful acts of their agents. Nevertheless, we are not persuaded that partners should automatically be equated with corporations for the purpose of assessing multiple damages for the knowing and wilful act of their agents. A corporation is an impersonal entity that can act only through agents, and so requiring some measure of personal culpability would exempt businesses operating in corporate form from multiple damages. Partnerships differ from corporations in that those held vicariously liable for multiple damages are often themselves natural persons, capable of personal culpability.[11] It makes sense then to consider the partners' knowledge or wilfulness. Moreover, corporations exist in part just to insulate from and limit the liability of natural persons associated with them as investors, while partners are generally subject to unlimited personal liability.

---

[11]We do not rule on a number of other possible situations, as where there is a corporation which is a partner or there is a limited partnership perhaps with a corporate general partner. And particularly, we do not consider the bearing of the recently enacted statute, St. 1995, c. 281, which allows law firms to organize as limited liability partnerships and limited liability corporations, on the appropriateness of assessing multiple damages against copartners under c. 93A.

There are few State courts which have addressed specifically the liability of innocent partners for penalties arising out of the fraudulent act of their copartner. Of the six States that have addressed this issue, Texas, Maryland, and Missouri hold innocent partners liable for punitive damages,[12] and New Mexico, Indiana, and Hawaii do not.[13]

---

[12]Maryland held innocent partners liable in an alternative holding in *Meleski* v. *Pinero Int'l Restaurant, Inc.*, 47 Md. App. 526, 535-536 (1981) (sufficient evidence for the jury to have found that the partners ratified or authorized the fraudulent acts, but such evidence not necessary because partners punitively liable for copartner's actions). Texas held innocent partners liable in *Termeer* v. *Interstate Motors, Inc.*, 634 S.W.2d 12 (Tex. Ct. App. 1982) (innocent partner in auto dealership told consumer that partnership would pay for car after innocent partner learned of accident, but court stated that he would nevertheless be liable for treble damages for copartner's actions). Missouri held innocent partner liable in *Rogers* v. *Hickerson*, 716 S.W.2d 439, 447 (Mo. Ct. App. 1986) (question concerning innocent partner's silence set aside because partners are liable punitively for copartner's fraud committed within the scope of the partnership). See also *Blue* v. *Rose*, 786 F.2d 349, 352-353 (8th Cir. 1986) (stating that Missouri law holds innocent partners liable for punitive damages); *Glass Design Imports, Inc.* v. *Rastal GmbH & Co. KG*, 672 F. Supp. 419, 423 (W.D. Mo.) (partners liable for copartner's act so long as done within scope of wrongdoer's authority), aff'd in part and rev'd in part on other grounds, 867 F.2d 1139 (8th Cir. 1987).

[13]New Mexico specifically held that innocent partners are liable for compensatory damages but not punitive damages arising from a partner's fraudulent conduct. *Duncan* v. *Henington*, 114 N.M. 100, 102-103 (1992) (innocent partners not punitively liable for copartner's fraudulent acts); *Samedan Oil Corp.* v. *Neeld*, 91 N.M. 599, 601 (1978) (principal or master liable for punitive damages only where he "has in some way authorized, participated in or ratified the acts of the agent or servant, which acts were wanton, oppressive, malicious, fraudulent or criminal in nature"). Hawaii, according to the Bankruptcy Court in *Hayes* v. *Quincy (In re WPMK Corp.)*, 59 B.R. 991, 997 (Bankr. D. Haw. 1986), prohibits punitive damages liability against innocent copartners unless "the partnership [expressly or impliedly] authorized, ratified, controlled, or participated in the alleged tortious activity." Indiana holds that innocent copartners are exempt from punitive damages liability, because the purposes of punishment and deterrence are not served by assessing innocent parties. *Husted* v. *McCloud*, 450 N.E.2d 491, 495 (Ind. 1983), superseded on other grounds by statute, Ind. Code § 34-4-30-2 (1988), which provides that "it is not a defense to an action for punitive damages that the defendant is subject to criminal prosecution for the act or omission that gave rise to the civil action." See also *Lake Shore* v. *Prentice*, 147 U.S. 101, 107 (1893) (punitive damages punish the guilty).

We acknowledge that to make such a distinction between corporations on the one hand and partnerships and perhaps other natural persons in the position of master or principal on the other engrafts on the statute a middle degree of responsibility, and we shall not lay out here a comprehensive set of rules to govern this heretofore unexplored territory. It is only in the course of further adjudication that the courts can develop a sensible approach to this freshly raised problem. Suffice it to say that the jury's finding that there was no apparent authority in this case, although the trial judge did not feel bound by it in reaching his own conclusions under c. 93A, might have some bearing on whether double or triple damages are appropriate. See *International Fidelity Ins. Co.* v. *Wilson,* 387 Mass. 841, 856 (1983) (multiple damage provisions designed to impose a penalty that varies with the culpability of the defendant). We note that our courts are already familiar with the task of determining degrees of culpability under the statute as they must determine whether to impose double or treble damages. See *International Fidelity Ins. Co.* v. *Wilson, supra* at 853 ("Based on the egregiousness of each defendant's conduct, the trial judge may assess between double and treble damages").

### IV.

To summarize, we hold that under the law of the Commonwealth a partnership may be liable by one of two routes for the unauthorized acts of a partner: if there is apparent authority, or if the partner acts within the scope of the partnership at least in part to benefit the partnership. Where there is neither apparent authority nor action intended at least in part to benefit the partnership, there cannot be vicarious liability. Accordingly, we answer the first question "no," but only because even if a partner acts with no purpose to benefit the partnership, vicarious liability may yet be appropriate, if he is clothed with apparent authority. In this case, however, the jury found that there was no apparent authority. We answer the second question, "Yes," but add that, while c. 93A permits a finding that an innocent and

uninvolved partner may be vicariously liable for the acts of his partner, some further showing of culpability or involvement must be made to justify multiple damages.