van Gestel, J.
This matter is before the Court on a motion by the plaintiff, Stephen M. Fytka (“Pytka”), seeking partial summary judgment on Counts III, IV, V and VI of Plaintiffs Corrected Complaint against the defendant Gadsby Hannah LLP (“Gadsby”).

*430
BACKGROUND

Both the original complaint and the so-called corrected complaint present basically a claim for legal malpractice. Each complaint contains eight separate counts against some or all of three defendants. The three defendants are Gadsby, and two of its “lawyers,”[1] Evan Slavitt (“Slavitt”) and Douglas A. Fineberg (“Fineberg”). The eight counts, and the defendants that are the targets thereof, are: Count I for legal malpractice against Gadsby and Slavitt; Count II for negligence against Fineberg; Count III for deceit against Gadsby and Fineberg; Count. IV for negligent misrepresentation against Gadsby and Fineberg; Count V for violation of G.L.c. 93A, Secs. 2 and 11 against all defendants; Count VI for breach of fiduciary duty against all defendants; Count VII for negligent hiring, retention and supervision against Gadsby and Slavitt; and Count VIII for breach of contract against Gadsby and Fineberg.
The essence of the malpractice follows. Pytka was a shareholder in Streamware Corporation (“Streamware”). He acquired his shares on April 1, 1999. In late 1999, Crane Co. (“Crane”) began negotiations for the acquisition of all of the capital stock of Streamware.
Pytka, in December 1999, retained Fineberg to represent him in the Streamware/Crane transaction. At that time, Fineberg was an employee of Gadsby, held a position as “of counsel” and was described as “director” of the “emerging business and crisis planning group,” a business consulting affiliate of Gadsby. A web site of the affiliate stated:
Fineberg’s legal practice has focused on international business, banking, mutual funds, securities law and corporate finance, emerging businesses, technology ventures and financial institutions. His practice has included both general corporate representation, including negotiation and structure of finance, mergers, acquisitions and dispositions, joint ventures, private offerings, venture capital financing and initial public offerings as well as securities laws for public companies, mutual funds and their directors and officers, ongoing disclosure and communications, and development of internal corporate securities policies.
Gadsby publicly stated that Fineberg was an attorney who practiced in the areas of corporate law, international business law, banking law, mutual funds, corporate finance and securities law.
Fytka identified three concerns on which he wanted Fineberg’s advice and representation: (1) he wanted to secure long-term capital gains treatment on the sale of his Streamware stock to Crane; (2) he wanted to participate in the substantial earn-out portion of Crane’s purchase offer to Streamware, even though he would notbe an employee ofStreamware after the sale; and (3) he wanted Fineberg to negotiate a favorable severance package upon his termination from Streamware.
Fineberg told Fytka that he was qualified to represent him as his attorney on all three of the identified issues. They then discussed Fineberg’s hourly rate for legal services and an estimate of the total cost for the representation. Attached to the complaint is a Januaiy 10, 2000, engagement letter to Fytka, on Gadsby letterhead, signed by Fineberg.
In fact, Fineberg has never been admitted to the practice of law in Massachusetts or in any other state or jurisdiction in the United States. Pytka was never told by Fineberg or Gadsby that Fineberg was not a lawyer. At the first meeting with Fineberg, Pytka was handed a business card that read:
DOUGLAS A. FINEBERG
GADSBY & HANNAH LLP
ATTORNEYS AT LAW
BOSTON
It is also alleged that Fineberg, in his representation of Fytka, “directed and controlled the professional judgment of one or more” Gadsby attorneys.
It is further alleged thát Fineberg failed to secure a structure for the Streamware/Crane transaction that would have permitted Pytka to attain long-term capital gains treatment for the sale of his stock.
While stated more fully in the complaint, the essence of what occurred was as follows. Crane evidenced a willingness to have two closings on the Streamware/Crane acquisition, one before April 1, 2000 for all stock except Pytka’s, and one for Fytka after April 1, 2000. Fytka, because he was going to be traveling during March of 2000, gave Fineberg a durable power of attorney to act as his agent in his absence. Just before the end of March, Fineberg told Fytka that Crane was no longer willing to have two closings and it would not proceed at all unless Pytka sold his stock on March 27, 2000, a fact that Pytka alleges was not true. Further, it is alleged that Fineberg told Crane’s counsel that Fytka no longer was insisting upon a second closing; also said by Fytka to be untrue. Still further, it is alleged that Fineberg executed the transaction documents on behalf of Fytka pursuant to the power of attorney.
Fineberg is then alleged to have advised Fytka to become involved in a scheme to indicate to the IRS that April 3,2000, not March 27,2000, was the actual date of the closing, thereby achieving long-term capital gain status.
Gadsby billed Pytka $26,298.35 for the legal services in connection with the Streamware/Crane transaction, of which Fytka, after protesting the amount, paid a reduced fee of $20,500.
Slavitt is alleged to have assisted Fineberg in Fytka’s representation.
Although not in the complaint, Gadsby apparently learned that Fineberg was not a lawyer and terminated *431 his employment several months before this lawsuit was filed. Gadsby, nevertheless has provided a joint defense of itself and Fineberg in this matter.
On January 24, 2002, Judge Gants issued an order of default against Fineberg for persistent failure to appear for his deposition. An assessment of damages hearing on that default is scheduled for November 4, 2002.
On July 29, 2002, Judge Muse allowed Pytka’s motion to amend his complaint. The amended complaint contains the same eight counts, against the same defendants. The only change in the two complaints is that the amended complaint omitted paragraph 64. Paragraph 64 in the original complaint read in its entirely:
If Pytka had sold his Streamware stock at a second closing pursuant to the terms provided by Crane in the February 27, 2000 draft agreement, the sale would have qualified for long-term capital gains treatment.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving parly is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
The facts recited above are taken from both versions of the complaint and, by virtue of the default, are not subject to dispute and they are binding, at least on Fineberg. In order to sort out the correct resolution of the present motion, however, the nuances of the effect of the default of Fineberg, the implications on Gadsby of vicarious liability predicated on respondeat superior theories, and the elements of proof in the underlying case all require some assessment.

Effect of the Default

A recent decision from the Appeals Court speaks to the default issue. In Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass.App.Ct. 667 (2001), there was a default pursuant to Mass.R.Civ.P. Rule 55(a) for failure by the defendants timely to file their answers. Here, of course, the default was the result of a Rule 37 sanction for failure to appear at a deposition. To this Court, however, the effect of the two defaults is the same. In Marshall the Appeals Court said, at pp. 670-71:
As stated in Multi Technology, Inc. v. Mitchell Mgmt. Sys., Inc., 25 Mass.App.Ct. 333, 334-35 (1988), citing Productora e Importadora de Papel, S.A. de C.V. v. Fleming, 376 Mass. at 833-35, “Upon default under Mass.R.Civ.P. 55(b), 365 Mass. 822 (1974), the factual allegations of a complaint are accepted as true for purposes of liability; the question whether an adequate statement of a claim for relief has been made, however, remains open . . . [T]he question of a complaint’s sufficiency turns on whether it provides enough information to give the defendant notice of what the dispute is about and asserts a right to recovery cognizable on some acceptable legal theory.”
Thus, as held in Productora e Importadora de Papel, S.A. de C.V., supra, 376 Mass. at 834-35, “even after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.”
This Court is also cognizant of the Supreme Judicial Court’s due process concerns with regard to the imposition of the ultimate sanction of default for a Rule 37 transgression. See Gos v. Brownstein, 403 Mass. 252, 255-57 (1988). So too, this Court is confident that Judge Gants had these concerns in mind when he defaulted Fineberg. His Order of Default (Paper #25) so reflects.

Vicarious Liability

The Court next turns to the issues surrounding Gadsby’s responsibilities for Fineberg’s actions while in Gadsby’s employ. The liability is vicarious, predicated upon a respondeat superior situation. See, e.g., Kansallis Financial Ltd. v. Fern, 421 Mass. 659, 675 (1996). When Fineberg represented Pytka he did so as a Gadsby “attorney,” and Fytka was billed by Gadsby for the services. Having held him out as such, the fact that Fineberg was not a lawyer does excuse Gadsby from its vicarious liability.
There is a public policy reason behind the concept of vicarious liability that does not depend solely upon concepts of agency and control. Prosser & Keeton, Torts (5th ed.), Sec. 69, pp. 500-01, states itas follows:
The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of that employer’s enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of the employees, and sought to profit by it, it is just that [it], rather than the innocent injured plaintiff should bear them; and because [it] is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.
Gadsby is vicariously liable for Fineberg’s actions in the course of its business as its employee. There is no requirement on Pytka to show direction or control by Gadsby over Fineberg in order to prevail. Fineberg had both apparent authority to act as an attorney for *432 Gadsby, and he acted within the scope of the Gadsby partnership to benefit the partnership. Kansallis Finance Ltd.., supra, 421 Mass. at 675. Nor does the fact that Gadsby is a Massachusetts limited liability partnership give it shelter from liability for actions of its employees that arise out of the performance of legal services on its behalf. See SJC Rule 3:06.
The fact that Fineberg was defaulted after he was terminated by Gadsby is of no significance either. If it is determined that Fineberg committed malpractice while in Gadsby’s employ, Gadsby is automatically vicariously liable, even if that determination comes about as a result of Fineberg’s default, rather than after a trial on the merits.
The facts Deemed Admitted by the Default in Relation to the Causes Alleged
In order to determine the full effect of the default on Fineberg’s liability, the Court next must examine the facts that are deemed proven against Fineberg by the default to determine whether they are sufficient, as a matter of law, to constitute a cause of action and award a judgment thereon on any of Counts in, IV, V and VI. This leads first to a review of the elements of a legal malpractice claim.
Legal malpractice is basically predicated upon the attorney’s breach of contract with the client. Hendrickson v. Sears, 365 Mass. 83, 84-85 (1974). Deceit, breach of fiduciary duty and consumer protection claims may also be brought against an attorney however: they generally sound in tort. See, e.g., Clark v. Rowe, 428 Mass. 339, 345 (1998); Brown v. Gerstein, 17 Mass.App.Ct. 558, 567-70 (1984).
Fytka must establish that Fineberg failed to exercise reasonable care and skill in handling the matter for which he was engaged, that Fytka incurred a loss, and that Fineberg’s malpractice was a proximate cause of the loss. See Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass.App.Ct. 107, 113 (1987).
For purposes of this case, Fytka must prove causation in the sense that his short-term capital gains tax liability would not have occurred without Fineberg’s negligence. Williams v. Ely, 423 Mass. 467, 476-77 (1996). See also Meyer v. Wagner, 429 Mass. 410, 424 (1999); McCann v. Davis, Malm & D'Agostine, 423 Mass. 558, 560 (1996).
Expert testimony is generally necessary to establish that an attorney failed to meet the standard of care owed. Pongonis v. Saab, 396 Mass. 1005 (1985). This is an aspect of the necessity to prove causation.
Neither causation nor the issue of whether Fineberg’s actions fell below the standard, if he was in fact an attorney, are established by the factual allegations against Fineberg. Essentially all of the other facts necessaiy to establish a legal malpractice are established by Fineberg’s default.
It is Counts I and II that essentially set forth traditional legal malpractice claims: Count I in so many words against Gadsby; and Count II in charging negligence against Fineberg. For the reasons just stated, neither of those two counts are yet fully established on a liability basis on the facts deemed proved by Fineberg’s default. Nor, of course, are they before the Court on the present motion.
The Court now turns to the claims specifically set forth in Counts III through VI.
Count III charges both Gadsby and Fineberg with deceit and Count IV charges Gadsby and Fineberg with negligent misrepresentation. Both counts attack the same situation. Here Fytka need only show “a false statement of material fact made to induce [him] to act, together with reliance on the false statement ... to [his] detriment.” Ravosa v. Zais, 40 Mass.App.Ct. 47, 52 (1996) (quoting from Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991)). Once again the Court is faced with a causation issue on both counts, not resolved by the facts established by Fineberg’s default. The deceit or misrepresentation here is that Fineberg was held out as a lawyer to Pytka, that Fytka relied on that representation and that Fineberg’s malpractice caused Pytka damages. Whether, however, Pytka suffered any loss as a direct and proximate result of that deceit or misrepresentation must yet be established.
Count V is against all defendants and is grounded on a claimed violation of G.L.c. 93A, Secs. 2 and 11. Nothing more is alleged in this count than what was alleged to support the earlier counts. Thus, before a c. 93A violation can be established on the facts deemed admitted there must be shown proximate cause leading to damages.
Count VI charges all defendants with a breach of fiduciary duty. Much like the deceit and misrepresentation counts, the causation-leading-to-damages issue arises again.

ORDER

For the foregoing reasons, it is premature to assess Gadsby Hannah LLP’s vicarious liability for the various breaches and torts claimed against Fineberg. Such liability seems quite obvious from the facts determined by the default that Fineberg had both apparent authority to act as an attorney for Gadsby, and he acted within the scope of the Gadsby partnership to benefit the partnership. Only the establishment of causation and damages stands in the way. Thus, the plaintiffs motion for partial summaiy judgment on Counts HI, IV, V and VI of Plaintiffs Corrected Complaint against the defendant Gadsby Hannah LLP is DENIED, without prejudice.

The Court puts the word “lawyers” in quotation marks because it turns out that Douglas A. Fineberg, although held out as such, was not in fact an attorney.