Salinger, Kenneth W., J.
Theresa Beauregard claims that negligence by her surgical anesthesiologist, Dr. Douglas Peebles, caused her to suffer permanent paraplegia. Defendant VHS Acquisition Subsidiary 9, Inc. d/b/a Metrowest Medical Center (the “Hospital”) waited until weeks before trial to seek summary judgment on the ground that it cannot be held vicariously liable for Dr. Peebles’ alleged negligence. The Court exercises its discretion to decide this motion on the merits, rather than deny it as untimely, because if the Hospital were correct then the trial and jury deliberations would be materially simplified by resolving the claims against the Hospital.
The Court concludes that the common-law rule holding a principal vicariously liable for tortious actions by an agent acting under apparent authority from the principal applies with full force to hospitals and physicians. If an injured patient can prove that she reasonably relied upon some indication by the hospital that a physician was acting as its employee or authorized agent, then the hospital will be vicariously liable for the physician’s negligence even if the doctor was neither employed by nor under the control of the hospital. In this case, a jury could find that Ms. Beauregard reasonably believed that the Hospital had indicated that Dr. Peebles was its employee or agent, that she reasonably relied upon that representation in agreeing to undergo surgery at the Hospital, and that the Hospital is therefore liable for any injury caused by Dr. Peebles’ alleged negligence. The Hospital’s motion for summary judgment will therefore be DENIED.
1. Undisputed Material Facts
The following are undisputed facts, as demonstrated in the evidentiary materials submitted in connection with the pending motion, or reasonable inferences that a jury could draw from those facts. In evaluating the motion for summary judgment, the Court “must. . . draw all reasonable inferences” from the evidence presented “in favor of the nonmoving party,” as a jury would be free to do at trial. Godfrey v. Globe Newspaper Co., Inc., 457 Mass. 113, 119 (2010). It has done so.
Ms. Beauregard underwent surgery at the Metrow-est Medical Center for an aortobifemoral bypass graft on October 5, 2011. Dr. Peebles was the attending anesthesiologist for this surgery. Dr. Peebles provided Ms. Beauregard with general anesthesia during the bypass procedure. He also placed an epidural catheter in the thoracic region of her spine for use in controlling post-operative pain. Dr. Peebles administered morphine via the epidural catheter near the end of the surgery. Another physician removed the catheter the next day. Approximately five and half hours after the catheter was removed, Ms. Beauregard could no *462 longer move either of her legs. It appears that this paraplegia is permanent.
Ms. Beauregard claims that Dr..Peebles negligently placed the epidural catheter, that in doing so he injured her spinal cord, and that this negligence is the cause of her injuries.
At the time of this surgery, Dr. Peebles was employed by Metrowest Anesthesiology, Inc., not by the Hospital. Dr. Peebles nonetheless served as the Hospital’s Chief of Anesthesia. He spent roughly 20 percent of his work time on administrative matters related to his responsibilities as Chief of Anesthesia.
Ms. Beauregard decided to undergo the surgery at the Hospital based on her surgeon’s recommendation. She did not independently hire Dr. Peebles as her anesthesiologist. Instead, she understood that Dr. Peebles was employed by the Hospital and had been assigned to her surgery by the Hospital. Ms. Beauregard read and signed a “Conditions of Treatment Agreement” six days before the surgery. The Agreement stated in part that:
I have been informed and understand that many of the physicians providing services to me in this facility are independent contractors and are not employees. Specifically the radiologists and cardiologists are not employees or agents of this facility unless otherwise identified.
The Agreement also stated that:
I acknowledge the care I receive while in this facility is under the direction of my physician(s). This facility is not responsible for the acts or omissions of my physician(s).
When Ms. Beauregard met with Dr. Peebles shortly before the surgery, he wore a white lab coat that had both his name and the Hospital’s name or insignia on it. Ms. Beauregard has stated under the pains and penalties of perjury that she would not have consented to surgery at the Hospital if she had known that Dr. Peebles was not employed by the Hospital.
2. Discussion
The typical grounds for suing a hospital for medical malpractice are not open to Ms. Beauregard on the facts of this case. First, if a physician is a hospital employee, then the hospital is liable under the doctrine of respondeat superior for any injury or harm caused by negligence of the physician that occurred within the scope of her employment by the hospital. Diaz v. Brigham Medical Assocs., Inc., 438 Mass. 317, 321-22 (2002). That is true even if the hospital had no “right to direct and control” the physician’s activities. Id. at 322. Ms. Beauregard cannot prevail under this theory because it is undisputed that Dr. Peebles was not employed by the Hospital, but instead was employed by Metrowest Anesthesiology, Inc. Second, if a physician is not a hospital employee, but the hospital exercises sufficient control over the “details of the physician’s physical activities” — such as which patients the physician sees, where she works, and the hours she keeps — the hospital may be liable for injuries caused by the doctor’s negligence “even though a hospital can never control the independent medical judgment of a physician.” Hohenleitner v. Quorum Health Res., Inc., 435 Mass. 424, 433 (2001); accord, Hopper v. Callahan, 408 Mass. 621, 634 (1990). Ms. Beauregard cannot avoid summary judgment under this theory either because she has been unable to muster any evidence that the Hospital had or exercised any right to control the details of Dr. Peebles’ practice.
But there is another theory under which the Hospital may be liable for injuries caused by the negligence of a physician or other medical caregiver who was neither employed by nor subject to the control of the Hospital.
2.1. Hospital Liability for Acts of Apparent Agents
The majority rule in other states is that hospitals may be held liable for the negligence of physicians who are independent contractors if the patient can prove that he reasonably relied on some representation or manifestation by the hospital that the physician was its employee or agent, and the negligence occurred while the doctor was acting within the scope of her apparent authority. In almost every state whose highest appellate court has considered the issue, hospitals may be held vicariously liable under such a theory of apparent agency. See, e.g., Seneris v. Haas, 291 P.2d 915, 926-27 (Cal. 1955) (applying principal to anesthesiologist); Richmond County Hosp. Auth. v. Brown, 361 S.E.2d 164, 166-67 (Ga. 1987); Jones v. HealthSouth Treasure Valley Hosp., 206 P.3d 473, 477-80 (Idaho 2009); Gilbert v. Sycamore Municipal Hosp., 622 N.E.2d 788, 792-96 (Ill. 1993); Sword v. NKC Hosps., Inc., 741 N.E.2d 142, 147-53 (Ind. 1999); Paintsville Hosp. Co. v. Rose, 683 S.W.2d 255, 256-57 (Ky. 1985); Bradford v.Jai Medical Systems Mgd. Care Organizations, Inc., 93 A.3d 697, 706-08 (Md. 2014); Grewe v. Mt. Clemens Gen’l Hosp., 273 N.W.2d 429, 433-34 (Mich. 1978); Butler v. Domin, 15 P.3d 1189, 1196-98 (Mont. 2000); Basil v. Wolf, 935 A.2d 1154, 1172 (N.J. 2007); Hill v. St Clare’s Hosp., 490 N.E.2d 823, 827-28 (N.Y. 1886); Renown Health v. Vanderford, 235 P.3d 614, 617-18 (Nev. 2010); Clark v. Southview Hosp. & Family Health Ctr., 628 N.E.2d 46, 53-54 (Ohio 1994); Roth v. Mercy Health Center, Inc., 246 P.3d 1079, 1089-90 (Okl. 2011); Eads v. Borman, 277 P.3d 503, 514 (Or. 2012) (en banc); George v. Fadiani, 772 A.2d 1065, 1069 (R.I.2001); Simmons v. Tuomey Reg’l Med Ctn, 533 S.E.2d 312, 322 (S.C. 2000); Boren ex rel Boren v. Weeks, 251 S.W.2d 426, 436 (Tenn. 2008); Baptist Mem Hosp. Sys. v. Sampson, 969 S.W.2d 945, 949 (Texas 1998); Mohr v. Grantham, 262 P.3d 490, 498-99 (Wash. 2011) (en banc); Burless v. West Virginia Univ. Hosp., Inc., 601 S.E.2d 85, 93-96 (W.Vir. 2004); Kashishian v. Port, 481 N.W.2d 277, 281-86 (Wisc. 1992); Sharsmith v. Hill, 764 P.2d 667, 672 (Wy. 1988); but see Sanchez v. Medicorp Health Sys., 618 S.E.2d 331, 335-36 (Va. 2005). Some intermediate appellate courts have reached the same conclusion in other states. See, e.g., Kristensen-Kepler v. Cooney, 39 So.3d 518 (Fla. 4th Dist. Ct.App. 2010); *463 Diggs v. Novant Health, Inc., 628 S.E.2d 851, 862 (N.C.Ct.App. 2006); but see Cefaratti v. Aranow, 154 Conn.App. 1, 45 (Conn.App. 2014).
Although the Supreme Judicial Court has taken note of this line of cases, see Diaz, 438 Mass. at 323, it appears that neither the SJC nor the Massachusetts Appeals Court has yet decided whether a hospital that imbues a physician with apparent authority to act as its agent can be held liable for the doctor’s negligence in the absence of an employment relationship or any right to control the doctor’s daily activities.
The Court concludes, however, that general principles of Massachusetts common law permit Ms. Beauregard to sue the Hospital under a theory that it is vicariously liable for torts committed by its apparent agents acting within the scope of their apparent authority.
Under Massachusetts law, a principal may create an agency relationship by giving someone either actual or apparent authority to act on its behalf. See Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742-43 (2000). “Apparent authority arises from ‘written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third party to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.’ ” Licata v. GGNSC Malden Dexter, LLC, 466 Mass. 793, 801 (2014), quoting Neilson v. Malcolm Kenneth Co., 303 Mass. 437, 441 (1939). “If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized.” Hudson v. Massachusetts Property Ins. Underwriting Ass’n, 386 Mass. 450, 457 (1982). “Only the words and conduct of the principal, however, and not those of the agent, are considered in determining the existence of apparent authority.” Licata, supra. ‘The party asserting the existence of apparent authority bears the burden of proof.” Id. An agent with apparent or ostensible authority can, for example, bind its principal in contract negotiations and other business dealings. See Linkage Corp. v. Boston Univ., 425 Mass. 1, 16 (1997).
Massachusetts law also recognizes “the well established common law rule” that a principal is vicariously liable for any injuries caused by the negligence or other tortious conduct of its agent while acting within the scope of the authority delegated to it by the principal. Tilley v. Brodie Mountain Ski Area, Inc., 412 Mass. 1009 (1992) (rescript); accord, New England Mica Co. v. Waltham Factories, 301 Mass. 56, 60 (1938); Kourouvacilis v. American Federation of State, County and Municipal Employees, 65 Mass.App.Ct. 521, 534, rev. denied, 446 Mass. 1108 (2006); see also G.L.c. 229, §2 (wrongful death law). “A principal may be held liable for the tortious conduct of its agent, even where the principal has no knowledge of the agent’s” wrongful acts or omissions. Savers Prop. & Cas. Ins. Co. v. Admiral Ins. Agency, Inc., 61 Mass.App.Ct. 158, 168, rev. denied, 442 Mass. 1105 (2004).
Significantly, this rule of vicarious liability applies whether the agent is acting with actual or apparent authority. See Kansallis Finance Ltd. v. Fern, 421 Mass. 659, 665 (1996). “Where the authority is only apparent, vicarious liability recognizes that it is the principal who for his own purposes found it useful to create the impression that the agent acts with his authority, and therefore it is the principal who must bear the burden of the misuse to which that appearance has been put.” Id For example, “a principal who puts an agent in a position which enables tihe agent, while apparently acting within his authority, to commit a fraud on a third parly is subject to liability to the third party.” Id. at 668-69 (adopting the Restatement (Second) of Agency §261 (1958)).
This common-law rule of vicarious liability for an apparent agent’s torts is stated in several forms by the American Law Institute’s Restatements of Law. It is summarized in the Restatement (Second) of Agency, §267 (1958), as follows:
One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.
It is summarized in the Restatement (Second) of Torts §429 (1965), using the language of an apparent master-servant, or employment, relationship, as follows:
One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.
Both formulations are consistent with and accurately summarize Massachusetts law, as discussed above.
Based on these principles, the Court concludes that under Massachusetts law a hospital is vicariously liable for negligence by a physician who, although an independent contractor, was acting under apparent authority. To succeed under that theory, Ms. Beauregard will have to prove that (1) the Hospital indicated, by words or conduct, that Dr. Peebles was providing anesthesiology services as the Hospital’s employee or agent, (2) Ms. Beauregard reasonably relied upon that apparent representation when she agreed to allow Dr. Peebles to serve as her anesthesiologist, and (3) Dr. Peebles was negligent, while acting as the Hospital’s apparent agent, and thereby caused Ms. Beauregard to suffer some injury or harm.
Ms. Beauregard may press this claim even though her complaint does not expressly refer to “apparent agency,” but instead alleges more generally that the Hospital is liable for the negligence of “its agents, servants, or employees.” As discussed above, a prin *464 cipal is liable for the wrongdoing of its agent, whether the agent is acting with actual or apparent authority. See Kansallis Finance, 421 Mass. at 666, 669. Under the principles of notice pleading, an allegation that the Hospital’s “agents” were negligent encompasses agents acting with apparent or actual authority. In any case, Ms. Beauregard is entitled to proceed with her claim that the Hospital is liable for Dr. Peebles’ alleged negligence even if she had failed to specify the correct legal theoiy in her complaint. See Gallant v. City of Worcester, 383 Mass. 707, 709 (1981) (complaint may allege facts plausibly suggesting that plaintiff has legally viable claim even if complaint does not name correct legal theoiy); Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass.App.Ct. 479, 487 (1988) (plaintiff may press at trial any legal theory fairly raised by allegations in complaint, even if that theoiy is not expressly invoked in the complaint).
2.2. Application to This Case
A reasonable jury considering the evidence in the summary judgment record could find that Dr. Peebles was the Hospital’s apparent employee or agent, and that the Hospital is therefore vicariously liable for any negligence by Dr. Peebles. As a result, the Hospital is not entitled to summary judgment in its favor. See Dennis v. Kaskel, 79 Mass.App.Ct. 736, 741 (2011) (summary judgment may not be granted where “a reasonable juiy could return a verdict for the nonmov-ing party” (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); accord Flesner v. Technical Communications Corp., 410 Mass. 805, 811-12 (1991).
A jury could find that Ms. Beauregard reasonably inferred that Dr. Peebles was a Hospital employee based on statements by the Hospital. The jury could conclude that it was reasonable for Ms. Beauregard to read the Conditions of Treatment Agreement as indicating that, with the exception of her own surgeon, the other medical professionals who cared for Ms. Beauregard before, during, and after her surgeiy were Hospital employees. She could reasonably have understood the provision stating that the Hospital “is not responsible for the acts or omissions of my physiciantsf as referring only to Ms. Beauregard’s surgeon, since the surgeon was the only physician whom she had selected. And she could reasonably have understood the further provision stating that “many of the physicians providing services to me in this facility are independent contractors and are not employees of the hospital” as not applying to Dr. Peebles or other anesthesiologists, because that provision is qualified by the immediately following sentencing that adds, “Specifically the radiologists and cardiologists are not employees or agents of this facility unless otherwise identified.”
Furthermore, a juiy could find that such an inference was corroborated by the fact that when Dr. Peebles met with Ms. Beauregard before the surgeiy he was wearing a lab coat with the Hospital’s name or logo on it. Direct evidence that the Hospital had a hand in Dr. Peebles’ professional garb is not required. A juiy could reasonably infer that the Hospital had either provided Dr. Peebles with his white coat or authorized him to wear a coat indicating that he was acting as the Hospital’s agent. “[T]he inferences drawn by a juiy from the relevant evidence ‘need only be reasonable and possible and need not be necessaiy or inescapable.’ ” Commonwealth v. Sullivan, 469 Mass. 621, 624 (2014), quoting Commonwealth v. Casale, 381 Mass. 167, 173 (1980).
Finally, ajuiy could choose to credit Ms. Beauregard’s sworn statement that she relied upon the Hospital’s apparent indications that Dr. Peebles was an employee or agent of the Hospital in deciding to proceed with the surgeiy at the Hospital under Dr. Peebles’ care.
Thus, if the juiy were also to find that Dr. Peebles had been negligent and that his negligence caused some injury or harm to Ms. Beauregard, the jury could reasonably hold the Hospital vicariously liable under a theoiy of apparent agency. See Kansallis Finance, 421 Mass. at 665-69.
ORDER
The motion by defendant VHS Acquisition Subsidiary 9, Inc. d/b/a Metrowest Medical Center for summary judgment on all claims against it is DENIED.